[Crim. No. 591.  In Bank.—November 8, 1900.]

## THE PEOPLE, Respondent, v. W. E. RUSHING, Appellant.

CRIMINAL LAW — FORGERY — UTTERING FALSE AND FORGED POWER OF ATTORNEY — FRAUDULENT SALE OF BANK ACCOUNT.—A power of attorney to the defendant executed by Elmer Geddes, under the name of "E. Geddes," with intent that it should thereby bind and represent Edwin Geddes, for a fraudulent purpose, is false and forged; and the uttering thereof by the defendant by signing the name "E. Geddes, by his attorney in fact, W. E. Rushing," to an assignment of a bank account kept in the name of "E. Geddes," by Edwin Geddes, upon a sale thereof at a discount, with intent to defraud the purchaser, and with guilty knowledge of all the facts, constitutes the crime of forgery by the defendant under section 472 of the Penal Code.

ID.—FORGERY IN SIGNING ONE'S OWN NAME.—One may be guilty of forgery in signing one's own name to an instrument with the fraudulent intent of making the instrument appear to bind another, and of making the writing purport to be the writing of another bearing the same name, or the same family name and initial.

ID.—FRAUDULENT INTENT AND GUILTY KNOWLEDGE OF DEFENDANT — SUPPORT OF VERDICT.—Where the circumstances of the case and the proofs are such that the jury could readily infer therefrom that the power of attorney was false and forged, and that the defendant uttered the same with fraudulent intent and guilty knowledge, the verdict of guilty of forgery will not be disturbed.

ID.—EVIDENCE—CONVERSATION OF DEFENDANT—IMPEACHMENT—REBUTTAL. Where the defendant on cross-examination denied ever having had a conversation with witnesses named or with any person to the effect that he and Geddes were going on a bank deal, and that if it went through they would have money to burn, the witnesses named may be allowed in rebuttal to testify to such conversation for the purpose of impeachment.

ID.—INSTRUCTION — HYPOTHESIS OF GUILT AND OF INNOCENCE — CIRCUMSTANTIAL EVIDENCE — CRITICISM — ERROR CORRECTED. — Where the jury were properly instructed that "every fact essential to sustain the hypothesis of guilt and to exclude the hypothesis of innocence must be fully proved," such instruction corrects any error or vice in the remainder of the instruction copied from the opinion in *People v. Cronin*, 34 Cal. 202, relative to a case of circumstantial evidence, since criticised as "inexact and illogical."

CXXX. Cal.—29

ID.—MISCONDUCT OF DISTRICT ATTORNEY AND JUDGE—CONFLICTING AFFI-
DAVITS—PROVINCE OF JUDGE — DISCRETION—APPEAL.—Where there
were conflicting affidavits as to alleged misconduct of the dis-
trict attorney and of the judge, the duty of ascertaining the
truth therefrom was peculiarly the province of the judge who
tried the case, and his decision thereupon will not be inter-
fered with upon appeal, unless it clearly appears that his dis-
cretion was abused.

ID. — NEWLY DISCOVERED EVIDENCE — DISCRETION — PRESUMPTION. — A
motion for a new trial on the ground of newly discovered evi-
dence is addressed to the discretion of the court, and the pre-
sumption is that the discretion was properly exercised in deny-
ing the motion, when the affidavits were conflicting, and a
strong case was not made by the moving party, both in respect
of diligence and as to the truth and materiality of the newly
discovered evidence.

APPEAL from a judgment of the Superior Court of Fresno
County and from an order denying a new trial. E. W. Risley,
Judge.

The facts are stated in the opinion.

Frank H. Short, and W. D. Crichton, for Appellant.

Tirey L. Ford, Attorney General, and A. A. Moore, Jr., Dep-
uty Attorney General, for Respondent.

COOPER, C.—The defendant was charged in the informa-
tion with the crime of forgery in having, on the thirty-first day
of January, 1899, willfully and knowingly uttered and passed
as true and genuine a certain false, forged, and counterfeit
power of attorney, with intent to cheat and defraud one Levy.
He was convicted and judgment entered accordingly. This ap-
peal is from the judgment and from an order denying defend-
ant's motion for a new trial.

1. The main point urged upon this appeal is that there is
not sufficient evidence to sustain the verdict. It is the settled
rule that if the verdict of the jury is based upon substantial
evidence it will not be disturbed, although it may not be sup-
ported by a preponderance of the testimony. All questions of
conflict of testimony and of credibility of witnesses are wisely
left to the judgment of the jury, they being the exclusive judges
of all questions of fact.

In this case, after a careful consideration of the evidence, we think it supports the verdict. It appears that some time prior to the date of the alleged offense one Edwin Geddes had an account amounting to several hundred dollars with the Fresno Loan and Savings Bank, which afterward suspended business and went into liquidation. The account of said Edwin Geddes was evidenced by a bank-book, and the account and book contained the name "E. Geddes." This book and account were, after the suspension of the said bank, assigned by said Edwin Geddes to the First National Bank of Fresno city for collection. The defendant procured a power of attorney from one Elmer Geddes, signed and acknowledged under the name of "E. Geddes." Under this power of attorney the defendant sold the account to one Levy for sixty-five cents on the dollar and received a check from Levy for the amount of eleven hundred and three dollars and seventy cents. The check was drawn payable to the order of E. Geddes. The defendant took the check to the bank, indorsed it "E. Geddes, by his attorney in fact, W. E. Rushing," and the check was paid to defendant. That the money was procured under an assignment made by defendant as attorney in fact of Elmer Geddes, who had no account at the bank, is not disputed. That the power of attorney was signed "E. Geddes," and the assignment to Levy made in the name "E. Geddes," is conceded. Defendant received the money from Levy upon the representation that he was selling the account of "Edwin Geddes" and that he had the genuine power of attorney of said Edwin Geddes. There is no question but that defendant was guilty if he knew that Elmer Geddes, whose power of attorney he held, was not the owner of the account at the bank. The question as to his guilty intent was for the jury, and, if the evidence was such that it could reasonably draw therefrom the inference of guilt, its verdict will not be disturbed. (*People v. Swalm,* 80 Cal. 49.[1])

. The defendant uttered a forged instrument and thereby defrauded Levy. This being an unlawful act it is presumed that it was intended. The defendant took the false Geddes twice to a notary public to get his acknowledgment to the power of attorney. He sold the account and book for much less than its

---

[1] 13 Am. St. Rep. 96.

value.   After the power of attorney was drawn defendant asked one Hockenberry to say nothing about the transaction until he got the money.   He made contradictory statements as to the whereabouts and identity of Geddes to the witness Bernhard. He made inquiries as to the whereabouts of Edwin Geddes prior to the time he procured the power of attorney from Elmer Geddes.   He asked the witness Irwin about Edwin Geddes and as to what kind of a man he was.   He said in the presence of the same witness and one Angell, while with Elmer Geddes: "Geddes and I are going to Merced to-night.   We are working on a little bank deal here, that if it goes through we will have plenty of money, or money to burn."   Defendant testified that he paid the money he received less his commission to one Shanklin, a brother in law of Elmer Geddes.   That he paid half his commission to one Shattuck, a real estate dealer, who assisted to find a purchaser for the account.   Neither Shanklin, Shattuck, nor Elmer Geddes were called as witnesses.   There are other circumstances which strongly point to defendant's guilty knowledge, but the above are sufficient.

2. It is contended that, conceding that defendant had guilty knowledge of the falsity of the transaction, that he was guilty of false personation, and not of forgery.   That the signing of his own name by Elmer Geddes to the power of attorney would not constitute forgery, although the signature was intended by Elmer Geddes and defendant to be used as the signature of Edwin Geddes with a fraudulent purpose.   We do not so understand the law.   Every person who, with intent to defraud another, falsely makes, utters or publishes a power of attorney, knowing the same to be false or forged, is guilty of forgery. (Pen. Code, sec. 470.)

A man may be guilty of forgery by making a false deed or instrument in his own name, if the name was placed upon the instrument with the fraudulent intent of throwing the *onus* of the obligation upon another, and of making the writing purport to be the writing of another.   A man who forges another's name cannot excuse himself upon the ground that the name happened to be identical with his own.   (2 Bishop's New Criminal Law, sec. 587; 2 Russell on Crimes, 9th ed., 718 et seq.; *People v.*

*Peacock*, 6 Cow. 72; *Barfield v. State*, 29 Ga. 127.[2]) Because the initial of Elmer Geddes' name is "E," he will not be allowed to forge the name of every other Geddes in the state whose initial might be "E," and in defense claim that he was only signing his own name. If the power of attorney was made and signed by Elmer Geddes for the fraudulent purpose of getting the money of Edwin Geddes, which was on deposit in the bank, and if defendant knew all these facts and uttered the power of attorney for the purpose of making the sale to Levy, knowing that Levy believed it to be the power of attorney of Edwin Geddes, he committed the crime of forgery.

3. There was no error that would justify a reversal in the admission of the testimony of the witnesses Irwin and Angell in rebuttal. Counsel concede the rule correctly when they say: "Ordinarily, the order of proof is in the discretion of the trial court, and when there is not an abuse of discretion a case will not be reversed solely because the order of proof is varied somewhat from its customary or even from its proper channels." The court did not abuse its discretion in the admission of this testimony. The evidence was also proper for the purposes of impeachment. In the cross-examination of the defendant he was asked relative to his inquiries as to the whereabouts of Edwin Geddes, and also as to whether or not the conversation occurred in which he said he was going to Merced on a bank deal. He said: "I did not have a conversation with Con Angell and Jack Irwin or anyone else being present in which I stated in substance and effect that I and Geddes were going to Merced that night on a bank deal, and if it went through we would have money to burn; no such conversation took place anywhere at any time."

The testimony objected to as rebuttal was to the effect that defendant did have such conversation, and was admissible for the purpose of impeachment.

4. It is claimed that the court erred in giving the following instruction: "You are further instructed that while every fact essential to sustain the hypothesis of guilt and to exclude the hypothesis of innocence must be fully proved, still where the evidence is entirely circumstantial, yet it is not only consistent

---

[2] 74 Am. Dec. 49.

with the guilt of the defendant, but inconsistent with any other rational conclusion, the law makes it the duty of the jury to convict, notwithstanding such evidence may not be as satisfactory to their minds as the direct testimony of credible eyewitnesses would have been."

The instruction is copied from the opinion of Judge Sanderson in *People v. Cronin*, 34 Cal. 202, and while criticised was held not to be error in *People v. Dole*, 122 Cal. 495.[3] In the latter case, in an opinion written by the chief justice, the instruction is criticised as being "inexact and illogical," but it was held that the vice was corrected by the special instruction (as in this case) "that every fact essential to sustain the hypothesis of guilt and to exclude the hypothesis of innocence must be fully proved."

5. It is claimed that the district attorney was guilty of improper conduct, in his address to the jury, in commenting upon the defendant's evidence and his occupation, and that the judge was guilty of improper conduct in keeping the jury out too long, and in a remark made to defendant's attorneys when interrupted while reading instructions to the jury. In support of the claim the defendant's attorneys read their own affidavit in which they set forth what they claim to be the facts. The prosecution read in reply the affidavits of the district attorney, his deputy, and the judge. It is sufficient to say that these affidavits on behalf of the prosecution were squarely contradictory of the affidavits of defendant as to all material matters tending to show misconduct either of the district attorney or the judge. The duty of ascertaining the truth from the affidavits was peculiarly the province of the judge who tried the case, and we would not interfere unless it clearly appears that such discretion was abused. In this case we do not feel justified in interfering with the conclusion reached by the judge who heard the evidence, and who personally knew of all the proceedings as they occurred in the courtroom.

6. The court did not err in denying the motion for a new trial on the ground of newly discovered evidence.

"A motion for a new trial upon the ground of newly discovered evidence is looked upon with suspicion and disfavor, and a

---

[3] 68 Am. St. Rep. 50.

party who relies upon that ground must make a strong case, both in respect to diligence on his part in preparing for the new trial and as to the truth and materiality of the newly discovered evidence, and that too, by the best evidence obtainable; and if he fails in either respect, his motion must be denied." (*People v. Freeman,* 92 Cal. 359.)

Applications of this kind are addressed to the discretion of the court below, and the presumption is that the discretion was properly exercised. There are many affidavits in the record, some in direct conflict with others. The trial court was in a far better position than this court to pass upon the truth of the matters contained therein.

We have examined the other alleged errors, and find nothing that would justify a reversal of the case.

We advise that the judgment and order be affirmed.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

> McFarland, J.,      Temple, J.,
> Garoutte, J.,       Van Dyke, J.,
> Harrison, J.,       Henshaw, J.