[Crim. No. 223.   Third Appellate District.—October 28, 1913.]

THE PEOPLE, Respondent, v. J. KAWASAKI, Appellant.

CRIMINAL LAW—HOMICIDE—DEFENSE OF ALIBI—SUFFICIENCY OF EVIDENCE.—In this prosecution for homicide the evidence sustains the finding against the defendant on his claim of *alibi* and justifies the jury in concluding him to be the identical person who did the killing.

ID.—ALIBI—REFUSAL OF INSTRUCTIONS REGARDING.—The refusal to give an instruction requested by the defendant on the question of *alibi* is proper, when full and correct instructions have been given on the subject, and the one refused adds nothing to one which has been given at the defendant's request, and the court tells the jury over and over again that if they have a reasonable doubt of the defendant's guilt they must acquit him, and that the law deems it better that many guilty persons should escape rather than one innocent person be punished.

ID.—IDENTITY OF ACCUSED—INSTRUCTIONS CAUTIONING JURY.—An instruction to "view with care most earnestly the testimony of those who testify to defendant's identity," is open to the objection that it is argumentative in form and directs special attention to one particular feature of the testimony, thereby conveying the implication that the judge is distrustful of it.

ID.—EVIDENCE AS TO WHEREABOUTS OF ACCUSED AT TIME OF CRIME.— If a witness testifies that he was at a theater with the defendant on the night of the homicide, it is proper to exclude questions as to when he heard of the crime, if counsel does not state that the purpose of the testimony is to show that the homicide was committed while the witness and the defendant were at the theater, and that they first learned of its commission on their return therefrom.

ID.—EXAMINATION OF WITNESS—COUNSEL TAKEN BY SURPRISE.—Where counsel for the defendant is taken by surprise in questioning a witness, but does not take advantage of permission given by the court to examine the witness as to different statements made before the trial, and turns the witness over to the prosecution for cross-examination, and the prosecution, without objection, examines the witness as to such statements, counsel for the defendant cannot, on redirect examination, go into the matter, nor can he have the answers of the witness on cross-examination stricken out.

ID.—UNSATISFACTORY TESTIMONY—SURPRISE—RIGHT TO SHOW CONTRARY STATEMENTS ELSEWHERE.—The mere failure of witnesses to give favorable testimony for the party producing them does not entitle him to prove that they have made contrary statements elsewhere.

ID.—REFUSAL OF NEW TRIAL—NEWLY DISCOVERED EVIDENCE—PRESUMPTION ON APPEAL.—Applications for a new trial on the ground of newly discovered evidence are addressed to the discretion of the court below, and the presumption is that the discretion was properly exercised, where affidavits in the record are conflicting.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order refusing a new trial. J. W. Hughes, Judge.

The facts are stated in the opinion of the court.

Arthur H. McCurdy, and C. F. Jones, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—Defendant, having been convicted of murder in the first degree with life imprisonment as the penalty imposed, appealed from the judgment and the order denying his motion for a new trial.

On the thirtieth day of August, 1912, in the evening about half past seven or eight o'clock, a boy thirteen years of age, named Earl M. Cue, was playing at "shadow boxing" on

Fourth Street, between L and M. streets, of Sacramento City, in what is known as the Japanese quarter. While doing so he stepped backward and accidently "bumped" into a Japanese who was passing and the latter grabbed the boy about the neck. Two older lads, the deceased, Henry Cordano, and Ernest Capra, who were sitting on a barrel a little distance away, came up and demanded of the Japanese that he release Earl. A fight then ensued between the two older boys and several Japanese who had come upon the scene. While this was in progress one of the Japanese stabbed Henry Cordano from behind, the knife entering near the base of the skull and severing the spinal cord, producing a wound from which death was inevitable. We need not dwell upon the incidents preceding the homicide as it is not disputed that the crime was murder in the first degree. It is, however, earnestly contended that the offense was not committed by the defendant and that therefore we have a case of mistaken identity.

The futility, however, of urging an appellate court to hold as a matter of law, that the jury was not justified in finding against defendant on his claim of *alibi* and in reaching the conclusion that he was the identical person who killed Cordano, must be apparent from the following recital of some of the evidence: Ernest Capra testified that he saw the defendant there that night. "He was there; he had the knife in his hand when he left Henry. He had his hand up towards his neck. He was just leaving him." He also testified that he watched defendant as he ran across the street with a knife in his hand; furthermore, that two or three hours afterward he saw the defendant again standing near the scene of the crime, and he recognized him. After the arrest the witness observed the defendant at the police station and identified him as the man he saw with the knife. To the question of the district attorney, "Now, Mr. Capra, are you positive that this defendant is the same man that you saw with a knife in his hand standing over the form of Henry Cordano when Cordano was stabbed?" he answered, "Yes, sir." If the foregoing constituted all the evidence as to identification it is clear that, under the familiar rule, we should not disturb the verdict of the jury as unsupported. But other witnesses added positive corroboration. One George W. Davenport testified that he saw the

defendant come "from the scene of the stabbing and go down the alley toward Third Street."

C. M. Hoffman was in an automobile at the time, near where deceased was killed, and in his testimony declared that his attention was attracted by "a bunch of Japanese crossing the street," and, "when they got on the other side of the street, I could see they were fighting, and I ran across there towards them. . . . I could see they were fighting, one Jap on one side of the boy, and one behind him. The one behind him was—it appeared to me at the time that he was hitting him with his hand, but when the boy dropped, and he started to run, why I saw him then going through the motions of putting up a knife. . . . Then he ran down the alley—right by me— six or eight feet of me, anyway." He testified further that he saw the running man plainly, and that he was positive that it was the defendant. Of course, it is needless for us to go any further with this branch of the case. Our responsibility as to the identity of the slayer is at an end when we have found in the record such ample support for the verdict of the jury.

There is no merit in appellant's contention that the court erred in refusing a certain proposed instruction on the question of *alibi*. It is apparent that full and correct instructions were given upon the subject. Indeed, the one refused added nothing to the following which was given at defendant's request: "An *alibi* means that the defendant, at the time of the homicide, was absent from the place where the crime was committed. If it be established in this case, that at the time of the homicide, the defendant was in another locality other than where the homicide was committed, then he is entitled to an acquittal; and, although the testimony introduced by defendant on this point should not clearly show that he was not there at the time of the homicide, but if it raises a reasonable doubt in your minds as to whether or not the defendant was then in another place, this is adequate under the law, and you should render a verdict of not guilty."

The court was clearly right in refusing to give an instruction containing the admonition "I instruct you, therefore, to view with care most earnestly the testimony of those who testify to defendant's identity." It was open to the two objections pointed out in *Healy* v. *People,* 177 Ill. 323, [52 N. E.

426]. It was argumentative in form, and it directed special attention to one particular feature of the testimony, thereby conveying the implication that the judge was distrustful of it.

Besides, if it may be assumed that the jury needed to be reminded of their duty to exercise the greatest care in weighing the evidence, we find sufficient exhortation to that effect in several of the instructions of the court. No intelligent juror could have failed to be impressed thereby with a sense of his deep responsibility in determining the guilt or innocence of the defendant. The jurors were expressly directed to "carefully weigh all the evidence," and they were told over and over again that if they had a reasonable doubt of the defendant's guilt they must find him not guilty. In the following instruction the court even cautioned the jury as to the danger of convicting an innocent person: "The policy of the law deems it better that many guilty persons should escape rather than that one innocent person should be convicted and punished, so that unless the jury, after a careful and thorough consideration of all the evidence in the case, can say and feel that every material allegation in the information is proved, beyond a reasonable doubt, the jury should find the defendant not guilty." In fact, appellant can find no ground whatever for justly criticising the action of the court in the matter of the instructions.

M. Shimada, a witness for defendant, was asked these questions: "When did you first hear of the difficulty in which the boy was cut that night?" "Had you heard anything about any cutting before you went to the theater?" The court sustained an objection of the district attorney that the questions called for immaterial and hearsay evidence. The witness had testified that he went to the Pantages theater with defendant and two companions on the evening of August 30, 1912, and was with him from 7:30 P. M. to 9:30 P. M. If true, this would establish a complete *alibi*. It is claimed by appellant that the said questions were asked for the purpose of showing "that the homicide was committed while they were at the theater, and that they first learned of its commission on their return as more definitely to fix the time." In the absence of any explanation on the part of defendant as to the limited purpose for which he sought the evidence, it is apparent that the ruling of the court was justifiable. To show their materiality

he should have stated that the purpose of the questions was to fix the particular time in the mind of the witness.

Moreover, it is quite manifest that the answers would have added nothing to the certainty or potency of the testimony of the witness. The evidence without conflict shows that the boy was killed in the evening of August 30. Besides, he had already fixed the date with reference to the night when the boy was killed as follows: "Q. Did you see him (the defendant) on the night that that boy was killed on 4th Street between L and M, August 30, 1912? Did you see Kawasaki that night? A. Yes; August 30th, I saw him in the morning and in the evening about half past seven he come to my cigar stand, and we went to the theater together." He also stated that the visit to the theater was Friday evening three or four days before defendant was arrested, and it appears from other testimony that this Friday was the fatal 30th of August. It is thus apparent that there was no uncertainty in the mind of the witness as to the synchronism of the two events, and his credibility would not have been affected by his reply to said questions.

One H. Kishi was examined as a witness for defendant. He testified that at the time of the homicide he was in a jewelry store near where the boy was killed and, in answer to the question, "Did you see any portion of the fight?" he said: "No, I never saw any portion of the fight." After several further questions and answers the following is shown by the record: "Q. You say you did not see any portion of that fight? A. No; I never saw it. Q. You understand what I am asking you, Mr. Kishi? A. Yes. Q. There is no doubt but what you understand me? Mr. Wachhorst: We object to that. The Court: Mr. Jones is evidently taken by surprise by the answer of the witness. You understand the question, do you, Mr. Kishi? A. Yes, sir. Mr. Jones: Q. Mr. Kishi, you were at my office, were you not? A. Yes, sir. Mr. Wachhorst:. I object to that. There is no evidence of any surprise. Mr. Jones: I say I am taken by surprise. The Court: Objection overruled." The witness, however, without being asked anything further along that line, was turned over for cross-examination when he was permitted without objection to state that he had related to Mr. Jones the same story he had told on the witness stand, and nothing more. On redirect examination he

was asked: "And you told me that you did not say to me that you saw that fight, and that Kawasaki had nothing to do with it?" An objection was made, and, after argument, the court sustained the objection, stating: "I saw by the answer of the witness that you were taken by surprise, and I overruled the objection of the district attorney to the question which you asked him about being in your office; but you stopped there, and you did not go on and cross-examine him as to whether or not he at that time made statements to you different from what he has made here. You stopped and turned him over to the other side." Whereupon counsel for defendant moved "to strike out all the answers of this witness, in answer to the district attorney on cross-examination. He had no right to ask those questions unless I at first had gone into the matter." The motion was denied.

There was no error in either ruling. On direct examination appellant was accorded the privilege of questioning the witness as to what he had stated to counsel, but advantage was not taken of the opportunity. The rule is that "the direct examination must be completed before the cross-examination begins, unless the court otherwise direct." (Code Civ. Proc., sec. 2045.)

After having allowed the questions on cross-examination to be answered without objection, appellant's dissatisfaction with these answers could not, under the familiar rule, avail him anything.

Furthermore, the testimony of the witness was not unfavorable to defendant, but simply failed to come up to the latter's expectations. In *People* v. *Cook*, 148 Cal. 345, [83 Pac. 48], it is said, through Chief Justice Beatty: "This court has in a number of cases held, and I have no doubt correctly held, that the mere failure of a witness to give favorable testimony for the party producing him does not entitle such party to prove that he has made contrary statements elsewhere." (See, also, *Zipperlen* v. *Southern Pacific Co.*, 7 Cal. App. 215, [93 Pac. 1049].)

Again, the question proposed by appellant was no more in effect than the inquiry made of the witness by the district attorney. The witness already having been interrogated fully as to what he had stated to counsel, it would seem that nothing could be accomplished by a repetition of the examination.

Indeed, the "surprise" of the appellant must have been made quite apparent to the jury by the testimony and manner of the witness, counsel's own declaration, and the statement of the court that he was "taken by surprise." If anything more were needed and appellant's theory be correct he should have offered to contradict the witness as to what he stated to counsel. This, however, was not attempted.

A motion for a new trial was made upon the ground of newly discovered evidence and denied by the court.

Waiving the question whether the affidavits used on said motion are sufficiently authenticated to entitle them to consideration, it is sufficent to say that they were fully answered by counter affidavits, and the court was amply warranted in resolving the conflict in favor of respondent. "Applications of this kind are addressed to the discretion of the court below, and the presumption is that the discretion was properly exercised. There are many affidavits in the record, some in direct conflict with others. The trial court was in a far better position than this court to pass upon the truth of the matters contained therein." (*People* v. *Rushing,* 130 Cal. 449, [80 Am. St. Rep. 141, 62 Pac. 742].)

Appellant's counsel seems fully persuaded that his client has been the unfortunate victim of racial prejudice, but we can find nothing in the record to support the contention. All of defendant's legal rights were carefully safeguarded, and there is ample evidence of his guilt. No error has been discovered, and nothing remains for us but to affirm the judgment and order denying the motion for a new trial, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 27, 1913.