[Civ. No. 50247. First Dist., Div. Two. Feb. 1, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
SOUTHERN PACIFIC COMPANY et al., Defendants and Appellants.

[Civ. No. 50248. First Dist., Div. Two. Feb. 1, 1983.]

HARWOOD INVESTMENT CO., Plaintiff and Respondent, v.
NORTHWESTERN PACIFIC RAILROAD COMPANY,
Defendant and Appellant.

[Civ. No. 50249. First Dist., Div. Two. Feb. 1, 1983.]

GLENN R. HASELSWERDT et al., Plaintiffs and Respondents, v.
NORTHWESTERN PACIFIC RAILROAD COMPANY,
Defendant and Appellant.

COUNSEL

B. Clyde Hutchinson, Kevin J. McGrath, Dunne, Phelps, Mills & Jackson, Peter W. Davis and Crosby, Heafey, Roach & May for Defendants and Appellants.

George Deukmejian, Attorney General, R. H. Connett, Assistant Attorney General, Michael J. Strumwasser, Deputy Attorney General, Charles R. Bell and Bell, Cox & Mannon for Plaintiffs and Respondents.

OPINION

**GRODIN, J.**[*]—On September 25, 1974, a fire started within a railroad right-of-way in a remote area of the Eel River Canyon in Mendocino County, and spread to other property, burning hundreds of acres of timber and grasslands until, 10 days later, it was finally suppressed. Harwood Investment Co. (Harwood) and Glenn R. Haselswerdt et al. (Haselswerdt), owners of property damaged by the fire, brought separate suits against Northwestern Pacific Railroad Company (Northwestern), owner of the right-of-way, claiming that the fire started on or escaped from the right-of-way due to the railroad's negligence. In addition, the State of California (State) sued Northwestern and its parent corporation, Southern Pacific Company (Southern Pacific), to recover fire suppression expenses. The three actions were consolidated for purposes of trial, and resulted in judgments in favor of plaintiffs in each action. By stipulation and order of this court, the appeals from the three judgments have been consolidated for purposes of briefing, argument and decision.

Appellants[1] contend that several errors occurred in the trial which require reversal or, alternatively, modification of at least one of the judgments. They contend that the instructions given by the trial court on the issue of negligence erroneously shifted the burden of proof on that issue to appellants; that the trial court incorrectly defined the grounds upon which the State may recover fire suppression expenses and made other determinations that improperly increased the extent of the State's award; and that the verdict for Harwood and the Haselswerdt respondents is not supported by the evidence and is at odds with the applicable law for measuring timber damages. For convenience, we will consider first the appellants' contentions as they relate to the judgments in favor of the private plaintiffs.

---

[*]Assigned by the Chairperson of the Judicial Council.

[1]As noted, Southern Pacific was named as a defendant only in the action by the State; for purposes of convenience, however, we will refer to the two railroad companies collectively as "appellants."

I.

## The Judgment in Favor of the Private Plaintiffs

A. *The trial court did not commit reversible error in its instructions to the jury on the issue of negligence.*

The fire was first observed by the crew of a Northwestern Pacific work train. Accounts varied from a small fire a few feet west of the track to a larger one up the slope of the bank beyond a ditch west of the track. The work train stopped, and some of the crewmen brought a fire extinguisher to fight the fire, but the extinguisher failed to operate properly. Efforts of the crew to control the fire by other means failed, and they radioed an alarm to the railroad terminal. Fire crews of the California Department of Forestry were then dispatched to fight the fire.

The origin of the fire is uncertain. There was evidence, however, that it could have originated from carbon or metal particles emitted by a train. There was no evidence of any other source. The trial court instructed the jury that if it found that the fire originated from the operation or use of any engine, railroad rolling stock or other device which may kindle a fire, "then you must find that there was negligence in the maintenance, operation, or use of such engine, or railroad rolling stock, unless you are persuaded of the nonexistence of such negligence by a preponderance of the evidence."

This instruction was based on Public Resources Code section 4435, quoted at the margin.[2] ▮ Appellants contend that while the term "prima facie evidence" as used in the quoted statute creates a rebuttable presumption (Evid. Code, § 602), the presumption is one affecting the burden of producing evidence, rather than one affecting the burden of proof, and it was therefore dispelled by the introduction of evidence showing that due care was exercised concerning the condition and operation of the train. For that reason, they contend, the jury should not have been instructed in the language of the presumption. (Evid. Code, § 604; *Slater* v. *Kehoe* (1974) 38 Cal.App.3d 819, 833 [113 Cal.Rptr. 790].)

We do not agree. The distinction between a presumption affecting the burden of producing evidence and one affecting the burden of proof is that the former

[2]Section 4435 provides: "If any fire originates from the operation or use of any engine, machine, barbecue, incinerator, railroad rolling stock, chimney, or any other device which may kindle a fire, the occurrence of the fire is prima facie evidence of negligence in the maintenance, operation, or use of such engine, machine, barbecue, incinerator, railroad rolling stock, chimney, or other device. If such fire escapes from the place where it originated and it can be determined which person's negligence caused such fire, such person is guilty of a misdemeanor."

implements no public policy and merely is enacted to facilitate trials (Evid. Code, §§ 603, 605). Public Resources Code section 4435 appears in an article of the Public Resources Code (§ 4421 et seq.) devoted to forest fire hazards. It is a reasonable inference that the Legislature intended section 4435 to implement a public policy encouraging persons who operate or use machinery having an inherent tendency to create fires to exercise care by making it less likely that they can escape liability for their negligence. (Cf. *Paiva* v. *California Door Co.* (1925) 75 Cal.App. 323, 333-334 [242 P. 887].) That the presumption created by that section may also facilitate the trial, and has an underlying basis in probability and logical inference, is not fatal to its status as one affecting the burden of proof. (Cal. Law Revision Com. com. to Evid. Code, § 605.)

In any event, it is unlikely that the jury's verdict was predicated on the section 4435 instruction, for the primary thrust of respondents' argument to the jury was that appellants were negligent in other respects; for failing to suppress the fire because of negligent maintenance or operation of the fire extinguisher, and for failure to clear combustible vegetation from the right-of-way in the area where the fire started. While the evidence as to both of these theories was conflicting, appellants do not contend that it was insufficient to support a verdict on either ground. Rather, they contend that the trial court erroneously instructed the jury as to the applicable principles.

The trial court, in this connection, read to the jury from sections 13007 and 13008 of the Health and Safety Code,[3] and then instructed them as follows: "If you find that a party to this action violated any of the statutes just read to you and that such violation was a proximate cause of injury to the property of another, you will find that such violation was negligence, unless such party proves by a preponderance of the evidence that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law."

■ BAJI No. 3.45 is designed to be read in conjunction with statutes which establish the standard of care to which the reasonably prudent man must adhere, so that a violation of the statute is negligence per se. (Cf. *Vesely* v. *Sager* (1971) 5 Cal.3d 153, 164 [95 Cal.Rptr. 623, 486 P.2d 151]; Evid. Code, § 669.) Appellants contend, and we agree, that it is not applicable to Health and Safety Code sections 13007 and 13008, since those statutes do not establish a standard of care, but merely codify the basis of fire liability.

---

[3]Section 13007 provides: "Any person who personally or through another wilfully, negligently, or in violation of law, sets fire to, allows fire to be set to, or allows a fire kindled or attended by him to escape to, the property of another, whether privately or publicly owned, is liable to the owner of such property for any damages to the property caused by the fire."

Section 13008 provides: "Any person who allows any fire burning upon his property to escape to the property of another, whether privately or publicly owned, without exercising due diligence to control such fire, is liable to the owner of such property for the damages to the property caused by the fire."

We do not agree, however, that the giving of that instruction was likely to lead the jury to believe that appellants had the greater burden of proof, or otherwise misguide the jury to appellants' prejudice. In relation to section 13008, the instruction was redundant, if not tautological: it told the jury that they could find appellants negligent if they failed to exercise "due diligence" in controlling the fire. The same is true of section 13007, insofar as that section speaks of "negligently" engaging in certain acts. And insofar as the instruction advised the jury, by reference to section 13007, that it could find the appellants negligent if they did those acts "wilfully" or "in violation of law," it was harmless: there was no evidence or claim of wilfulness, and the only laws that were alleged to have been violated were the fire liability statutes themselves.

■ Moreover, in reviewing jury instructions, the question for the appellate court is not whether any specific wording of any particular instruction misstates the applicable law, but rather whether the instructions as a whole misguided the jury. (*Bassett* v. *Crisp* (1952) 113 Cal.App.2d 295, 306 [248 P.2d 171]; *Blackmore* v. *Brennan* (1941) 43 Cal.App.2d 280, 287 [110 P.2d 723].) The trial judge gave an adaptation of BAJI No. 2.60, instructing the jury that the plaintiff had the burden of proof of negligence and causation, as well as other relevant instructions on the definition of negligence, and appellants point to nothing in respondents' arguments to the jury, or otherwise, which would support their contention that the jury was misled. (See *LeMons* v. *Regents of University of California* (1978) 21 Cal.3d 869, 876 [148 Cal.Rptr. 355, 582 P.2d 946].) We conclude that as to the foregoing instructions there was no error resulting in a "miscarriage of justice" as to require reversal. (Cal. Const., art. VI, § 13.)

B. *The trial court did not commit reversible error in its instructions to the jury on the measure of damages.*

The trial court instructed the jury as follows:

"Reasonable compensation for property lost or destroyed in, or because of, the accident. That amount is the fair market value of such property at the time of its loss or destruction.

"The measure of damages for the loss to a timberland owner of the 'stocking' of such timberland with growing trees is the dollar amount reasonably required to replace such stocking, to the extent it existed just before the fire, by the planting of trees.

"As used in this instruction, the term 'stocking' refers to the degree to which such timberland is occupied by live and healthy trees of a commercial species in place at least two growing seasons."

In addition, the court instructed the jury: "A plaintiff whose property was injured as a proximate result of some negligent conduct on the part of a defendant is entitled to recover compensation for such injury from that defendant. [¶] Thus, a land owner plaintiff is entitled to a verdict in this case if you find, in accordance with my instructions: 1. that defendant was negligent, and 2. that such negligence was a proximate cause of injury to that plaintiff's property."

■ Appellants complain that these instructions, taken together, improperly allowed the jury to award damages for *both* the fair market value of the timber destroyed and the cost of restoration of the property through reforestation. They rely upon *Heninger* v. *Dunn* (1980) 101 Cal.App.3d 858 [162 Cal.Rptr. 104] for the proposition that these are *alternative* measures of damages.

The facts of *Heninger* are inapposite. In that case, there was only one element of damage—the loss of trees and vegetation—and the trial court had denied damages because it found that the defendant's conduct (bulldozing a road through plaintiff's property) resulted in a net increase in the market value of the property. The Court of Appeal, emphasizing the "broad mandate" of Civil Code section 3333 to compensate for "all the detriment proximately caused" by tortious injury to property, held that the trial court could have awarded either the value of the trees and undergrowth, as timber or for their aesthetic qualities, or the cost of restoration, if reasonable and if the plaintiffs had "personal reasons" for restoration. (101 Cal.App.3d at pp. 861, 868-869.)

Here, there is no question but that the fire damaged plaintiffs' property and reduced its value. Moreover, it did so not only through destruction of trees used for timber, but through damage to the soil. In addition, respondents were required by law to replant to a certain minimum density, and they incurred expenses in their salvage operation. These are separate injuries. Experts on both sides testified in great detail concerning the various types of damage suffered by respondents, and the jury was instructed with respect to the possible ways of measuring the specific elements of damage. In the context of this case, we find no error.

C. *The amount of the damage award was not so "irrational" as to require reversal.*

■ The jury rendered a verdict in favor of Harwood for $230,000 and in favor of the Haselswerdt respondents for $52,000 in property damages. Citing *Benson Elec. Co.* v. *Hale Bros. Assoc., Inc.* (1966) 246 Cal.App.2d 686, 695-696 [55 Cal.Rptr. 73], and *Gundry* v. *Atchison, T. & S. F. Ry. Co.* (1930) 104 Cal.App. 753, 764 [286 P. 718], appellants attack the awards as "completely irrational" in light of the evidence, suggesting that the jury arrived at its figures by means of a "quotient or other compromise technique," or that it "simply misunderstood the evidence."

The point is without merit. The amounts awarded by the jury fell between the considerably lower estimate of appellants' expert and the considerably higher estimate of respondents' expert. After retiring, the jury asked the court whether it was obliged to choose between the two estimates and the court instructed that it was to give the expert testimony "the weight to which you decide it's entitled," but that the jury "has the power to make the final determination." That instruction is entirely in accord with applicable authority. "The trier of fact may accept the evidence of any one expert or choose a figure between them based on all of the evidence." (*Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.* (1948) 33 Cal.2d 89, 94 [199 Cal.Rptr. 302]; see also *Baker* v. *Industrial Acc. Com.* (1966) 243 Cal.App.2d 380, 390 [52 Cal.Rptr. 276].) *Benson Elec. Co.* v. *Hale Bros. Assoc., Inc., supra,* 246 Cal.App.2d 686, upon which appellants rely, reiterated the familiar principle that a reviewing court does not have to be able to arrive at the same figures after its review of the evidence, and that it is only when "no reasonable interpretation of the record" supports the figure that there is insufficient evidence to support the finding. The court in *Benson* gave as an example a judgment higher than any of the figures in the record. In *Gundry,* the other case relied upon by appellants, the verdict was lower than the only figure in the record. The record reflects that the jury in this case carefully considered the complicated evidence, and this court will not disturb its determination.

## II.

### THE JUDGMENT IN FAVOR OF THE STATE

A. *The trial court erroneously instructed the jury on appellants' liability for firefighting expenses, but the error does not require reversal.*

The jury was instructed: "If you find that the People incurred firefighting expenses as a proximate result of some negligence [*sic*] conduct on the part of defendants, then the People are entitled to a verdict in this case compensating them for their firefighting expenses in the amount of $202,743.52."

The statutory predicate for this instruction is Health and Safety Code section 13009, subdivision (a), which provides: "Any person who negligently, or in violation of the law, sets a fire, allows a fire to be set, or allows a fire kindled or attended by him to escape onto any forest, range or nonresidential grass-covered land is liable for the expense of fighting the fire, and such expense shall be a charge against that person. Such charge shall constitute a debt of such person, and is collectable by the person, or by the federal, state, county, public, or private agency, incurring such expenses in the same manner as in the case of an obligation under a contract, expressed or implied."

■ Appellants argue that the instruction was erroneous because it permitted the jury to find them liable for firefighting expenses solely on the basis of their alleged negligence in failing to extinguish the fire, without finding that appellants were responsible for having "kindled" the fire. They observe that the conditions for liability for firefighting expenses under Health and Safety Code section 13009, subdivision (a) are substantially the same as the conditions for damages to property under section 13007, and that while section 13008 imposes liability for property damage upon "[a]ny person who allows *any fire burning upon his property* to escape to the property of another . . . without exercising due diligence to control such fire" (italics added), section 13009, subdivision (a) does not contain comparable language. Appellants suggest that the suppression of fires of unknown origin is the topic of section 13008, and that neither section 13007 nor section 13009, subdivision (a) applies to such fires.

The present language of section 13009, subdivision (a) was the product of a 1971 amendment (Stats. 1971, ch. 1202, § 1, p. 2297). Prior to the amendment, section 13009 provided in pertinent part as follows: "The expenses of fighting any fires mentioned in Sections 13007 and 13008 are a charge against any person made liable by those sections for damages caused by such fires." (Stats. 1953, ch. 48, § 3, p. 682.)

The 1971 amendment was apparently a reaction to the decision in *People* v. *Williams* (1963) 222 Cal.App.2d 152 [34 Cal.Rptr. 806], in which the state sought recovery for firefighting expenses incurred when a fire set by defendant upon his own property spread out of control, and burned acreage within his own property boundaries. The court held that since section 13009 was (then) limited to persons made liable under sections 13007 and 13008, it did "not extend liability to a person who causes a fire which is contained to his own land." (*Id.*, at p. 155.) The Legislative Counsel's Digest for Assembly Bill No. 1247 of 1971, which became the amendment to section 13009, states that bill "[p]rovides that the expenses of fighting a fire are a debt of the person who negligently, or unlawfully sets the fire, allows it to be set, kindled, or to escape onto any forest, range, or nonresidential grass-covered land, rather than providing such liability only where the fire damages the property of another."

The State observes that prior to the 1971 amendment appellants would have been liable for firefighting expenses regardless of who set or "kindled" the fire, and argues from the foregoing history that the Legislature's intent by that amendment was not to contract the conditions of liability under section 13009, but to expand them. That may be the case, or the Legislature, viewing the issue more closely than previously, may have decided that liability for firefighting expenses should not be imposed in the absence of responsibility for the existence of the fire. In any event, we are bound by the rule that the primary indicator of legislative intent is the language of the statute. (*Moyer* v. *Workmen's*

*Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) The 1971 amendment to section 13009 incorporated the language of section 13007, but not the language of section 13008; we must conclude that liability for firefighting expenses under section 13009 is limited to the situations in which liability for property damage exists under section 13007.

We reject the State's contention that appellants may be found, as a matter of law, to have "attended" the fire within the meaning of section 13009 when the work train crew attempted to suppress it. On that theory, the appellants could have escaped liability if the crew had sat on its heels and done nothing. It seems more likely that the word "attended" refers to controlled fires, such as burning operations conducted pursuant to Public Resources Code section 4491 et seq. (See Health & Saf. Code, § 13009, subd. (b).)

We therefore hold that the instruction was erroneous insofar as it may have suggested to the jury that it could find in favor of the State on the basis of "some negligent conduct" on the part of defendants, without finding that defendants were responsible for setting or kindling the fire. We next consider whether the error resulted in a miscarriage of justice within the meaning of article VI, section 13 of the California Constitution.

"While there is no precise formula for measuring the effect of an erroneous instruction [citation], a number of factors are considered in measuring prejudice: (1) the degree of conflict in the evidence on critical issues [citations]; (2) whether respondent's argument to the jury may have contributed to the instruction's misleading effect [citation]; (3) whether the jury requested a rereading of the erroneous instruction [citation] or of related evidence [citation]; (4) the closeness of the jury's verdict [citation]; and (5) the effect of other instructions in remedying the error [citations]." (*LeMons* v. *Regents of University of California* (1978) 21 Cal.3d 869, 876 [148 Cal.Rptr. 355, 582 P.2d 946].)

Though the question of causation of the fire was contested, we conclude from our examination of the record that the evidence in support of an inference that the fire must have been caused by sparks or particles from appellants' trains, was overwhelming. First, there was evidence that such fires may be caused by particles emitted by trains, and though the evidence was conflicting on this point, that certain particles recovered from the scene of the fire were capable of igniting it. Second, there was evidence that the fire occurred immediately after appellant's train passed through the area, since the crew of a train which preceded it observed no signs of fire. Third, there was evidence that the location of the fire, when first observed, was close to the railroad tracks. And, finally, there was no substantial evidence of any other possible cause of the fire

in this remote area. While this circumstantial evidence may not be as compelling as Thoreau's example of finding a trout in the milk, it comes close.

Moreover, it does not appear that the State's argument, viewed in its totality, was likely to have misled the jury. While at one point the State's attorney suggested obliquely that it was not necessary for the jury to find that the train ignited the fire, the main thrust of his argument assumed the burden of convincing the jury of that causation, and of the separate proposition that appellants' negligence contributed to the starting or the spread of the conflagration. Indeed, in their motion for new trial and for judgment notwithstanding the verdict, appellants did not claim the jury was misled, contending instead that there was insufficient evidence to justify "the jury's implied conclusion that the railroad operations of defendant Northwestern Pacific were responsible for starting the fire."

The jury did not request a rereading of the erroneous instruction, or of related evidence. After deliberating for less than 90 minutes, it sent out a question about damages, then deliberated another 4 hours before reaching its verdict. While the verdict was nine to three, the circumstances suggest that the disagreement did not hinge upon the question of liability.

We observe also that while there was discussion among counsel and the trial judge regarding the proper reading of section 13009, the instruction at issue was adopted without any objection to, or discussion of, the "some negligent conduct" language. We are not prepared to accept the State's argument, asserted for the first time in its petition for rehearing, that appellants thereby waived objection to the instruction. It does appear from our examination of the record, however, that the offensive language did not have, for the parties or the jury at the time of trial, the sort of significance ascribed to it by appellants' able counsel on appeal. In short, we are unable to say that it is reasonably probable that a result more favorable to appellants would have been reached in the absence of that language. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]), and we conclude that there has been no miscarriage of justice.[4]

B. *Section 13009 permits recovery of regular payroll expenses of persons fighting a fire.*

 Appellants contend that the trial court erroneously included the payroll expenses of the State's regular employees in fighting the fire in computing the State's recovery under Health and Safety Code section 13009.

---

[4]This court, on its own motion, granted rehearing after an earlier opinion which reached a contrary conclusion as to the prejudicial nature of the instructional error. In arriving at our present view we have considered further briefs and oral argument from the parties, as well as our own further analysis.

Section 13009 provides that a defendant found to be responsible for the negligent or otherwise unlawful setting or escape of a fire "is liable for the expense of fighting the fire, and such expense shall be a charge against that person. Such charge shall constitute a debt of such person, and is collectable by the person, or by the federal, state, county, *public, or private agency,* incurring such expenses *in the same manner as in the case of an obligation under a contract, expressed or implied.*" (Italics added.) Thus, section 13009 provides for recovery as though the defendant had contracted with the plaintiff, public or private, to fight the fire. Such a contract would normally be expected to cover the reasonable value of the goods and services used in fighting the fire, regardless of whether the labor involved represented a regular expense or an additional expense of the agency involved.

This conclusion is consistent with the holding in *People v. Southern Cal. Edison Co.* (1976) 56 Cal.App.3d 593, 602-607 [128 Cal.Rptr. 697], in which the court held that "the proper measure for determining 'expense' incurred for fighting fires pursuant to section 13009 requires that (1) the expense claimed be incurred in fighting the fire, (2) that said expense be the proximate result of defendant's wrongful conduct, and (3) that said expense be reasonably incurred." (*Id.,* at p. 605.) In that case, the state submitted a one-page "Fire Cost Report" summarizing the items of expense incurred in fighting the fire attributable to the defendant, and a state forester with the Division of Forestry testified that the report included a compilation of activity cards maintained by members of the fire crew and other documents listing goods or services used in fighting the fire. (*Id.,* at p. 605.) The court concluded: "Once admitted, the fire cost report became evidence of the facts therein stated and, unless rebutted or contradicted, was conclusive on the issue of the amount of expenses incurred and expended. Moreover, the expenses as reported in the fire cost report are some evidence of reasonable value and, in the absence of a showing to the contrary, are sufficient [citations] to satisfy State's burden to prove the elements of its damage with reasonable certainty. [Citation.]" (*Id.,* at p. 606.) Clearly, the court assumed that regular payroll was an allowable expense, to the extent it did not include unreasonable amounts or amounts not attributable to time spent in fighting the particular fire.

C. *Prejudgment interest is recoverable under section 13009 from the date damages become capable of being made certain by calculation, and demand is made.*

■ Based upon Civil Code section 3287,[5] the trial court awarded the State interest on its judgment from October 4, 1974, the date when the fire was ex-

---

[5]Section 3287 provides: "(a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during

tinguished and the last suppression expenses were incurred. Appellants concede that section 3287 is applicable to recovery under Health and Safety Code section 13009, by reason of the latter section's reference to contractual liability, but contend that no liability for prejudgment interest arose until September 22, 1976, when the action was filed.

It may be, as the State contends, that it was possible to calculate the State's expenses on October 4, 1974, because all of the documents from which the State's claim was calculated were in existence at that time. Under contract law, however, where no time is specified for performance, a person who has promised to do an act in the future and who has the ability to perform does not default unless and until a demand for performance is made and performance is refused. (*Leonard* v. *Rose* (1967) 65 Cal.2d 589, 592 [55 Cal.Rptr. 916, 422 P.2d 604]; see also *Leatherby Ins. Co.* v. *City of Tustin* (1977) 76 Cal.App.3d 678, 689 [143 Cal.Rptr. 153]; *Anderson* v. *Pacific Bank* (1896) 112 Cal. 598, 603 [44 P. 1063].) The theory is that it is unreasonable or unfair to expect a defendant to pay a debt before he is aware of or able to compute its amount. Thus, in *General Insurance Co.* v. *Commerce Hyatt House* (1970) 5 Cal.App.3d 460, 474 [85 Cal.Rptr. 317], a contractor was awarded prejudgment interest "not from the date upon which construction was completed, but from the date upon which respondent provided the owners with the required accounting and supporting data." (See also 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 654, p. 556, and cases cited therein.)

Here, while the amount of the State's alleged damages, other than payroll, was not in dispute, appellants had no knowledge of the amount, or even of the existence of the claim, on October 4, 1974. Demand was made at least by September 22, 1976, when the complaint was filed. The State attached to its trial brief a demand letter dated August 6, 1976, but the trial court did not rule on its request that it take judicial notice of that document. On remand, the court will determine the earliest date on which demand for payment was made, compute prejudgment interest from that date, and modify the judgment in favor of the State accordingly.

The judgments in favor of the private plaintiffs in 1 Civil 50248 (A010263) and 1 Civil 50249 (A010264) are affirmed. The judgment in favor of the State in 1 Civil 50247 (A010262) is affirmed except as to the amount of prejudgment

---

such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state. [¶] (b) Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed."

interest to be recomputed upon remand in accordance with this opinion. Appellants will pay costs on appeal.

Miller, Acting P. J., and Smith, J., concurred.

Petitions for a rehearing were denied March 2, 1983, and appellants' petition for a hearing by the Supreme Court was denied March 29, 1983. Grodin, J., did not participate therein.