[No. A128596. First Dist., Div. One. Oct. 26, 2012.]

ELLEN RONY, Plaintiff and Respondent, v.
PAOLO COSTA, Defendant and Appellant.

[No. A128836. First Dist., Div. One. Oct. 26, 2012.]

ELLEN RONY, Plaintiff and Appellant, v.
PAOLO COSTA, Defendant and Appellant.

### COUNSEL

McNamara, Ney, Beatty, Slattery, Borges & Ambacher, Christopher T. Lustig and R. Dewey Wheeler for Defendant and Appellant.

Dorothy F. Waldrup, Bruce W. Blakely; Rifkind Law Group and Leonard Arlan Rifkind for Plaintiff and Respondent and for Plaintiff and Appellant.

### OPINION

**BANKE, J.**—To make way for an outdoor pizza oven in his backyard, defendant and appellant Paolo Costa hired a day laborer to remove overhanging tree limbs from nearby trees, one of which was a Monterey cypress growing on his neighbor's, plaintiff and respondent Ellen Rony's, property. However, the laborer not only trimmed limbs overhanging Costa's property, he also lopped off portions of the cypress solely on Rony's property. Distressed by the shearing of her tree, Rony sued Costa, but not the laborer, for wrongful injuries to timber. Following a bench trial, Rony was awarded $22,530 in actual damages, which the court doubled to $45,060 under a statutory

double-damages provision. The trial court also awarded Rony attorney fees under Code of Civil Procedure section 1029.8, which authorizes a fee award against an "unlicensed person who causes injury or damage to another person as a result of providing goods or performing services for which a license is required." (Code Civ. Proc., § 1029.8, subd. (a).)[1]

Both parties have appealed. Costa contends the trial court had no basis to include $15,000 in its damages award for loss of the tree's aesthetic value. He also contends section 1029.8 is inapplicable and the attorney fee award should be reversed. Rony, in turn, maintains the fee award is too low. We affirm the damages award, but conclude section 1029.8 is inapplicable and reverse the award of attorney fees.

### FACTUAL AND PROCEDURAL BACKGROUND

Rony has lived on property in Tiburon since 1979. Two towering Monterey cypress trees mark its northwest and northeast corners. According to Rony, the trees were "tall and magnificent" and "the major landscaping feature" of her yard. Over the past 30 years, she has periodically had the trees professionally trimmed to enhance their appearance. The tree in the northeast corner, with a height of between 50 and 80 feet and a trunk diameter of just over three feet, provided her yard with shade.

In 2000, Costa and his family moved onto the property just behind, and north of, Rony. A fence separates the two parcels. In 2008, Costa decided to install an outdoor pizza oven in the southeast corner of his yard. To clear a path for the smoke and heat that might emanate from the oven, Costa paid Carlos Guifarro, a day laborer whom Costa was "sure" was unlicensed, no more than $500 to cut tree branches extending over the area. Guifarro cut branches from an oak tree growing in Costa's yard. He also cut branches from the large cypress growing in the northeast corner of Rony's yard.

On the evening of April 30, 2008, Rony returned home from work and, from her kitchen, noticed a change in the lighting in her backyard. She made no investigation that evening. The next morning, however, a buzzing chain saw awoke her. She followed the sound, and found a ladder leading from the Costa property, over the fence, and up into the cypress tree on her property. Guifarro was sitting in the tree "hacking away" at it with a chain saw. Rony confronted Guifarro and accused him of trespassing. All told, Guifarro had made 32 cuts along the north side of the tree and had denuded three vertical limbs of their branches and growth. The cuts left stubs, were not of "professional" quality, and did not promote the health of the tree.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

Rony's expert, Raymond Moritz, described the cypress tree as now "very odd looking, being only one-sided and having so much dead material, spars exposed . . . very unaesthetic." Moreover, because of the nature of cypress trees, the uncut side of the tree would continue to grow while the other would not. Moritz believed the cypress had become a "hazard tree" in need of removal. Costa's expert, John Lichter, disputed the tree was a hazard, but agreed it had been "aesthetically compromised" and Guifarro's pruning was nothing Lichter would ever do or approve of.

Rony, herself, testified the cuts were "harsh, brutish, improper, and ugly" and she no longer enjoyed the aesthetics of the tree, which had previously offered shade, character, and beauty. One photograph, trial exhibit No. 6, shows the cypress, from one angle, looking like half a tree. Rony was concerned about all the remaining foliage being on the tree's south side and that the tree might fall southward onto her home. She wanted to replace it, but could not afford the cost.

On December 9, 2008, Rony filed a verified complaint against Costa and his wife, alleging they were liable for Guifarro's tree cutting and should pay enhanced damages under Civil Code section 3346[2] and Code of Civil Procedure section 733[3] (both of which punish wrongful injuries to trees). Rony eventually dismissed Costa's wife, and a four-day bench trial commenced on November 13, 2009.

During trial, the parties' experts offered two different appraisals of Rony's monetary damages. Rony's expert, Moritz, believing Rony needed to replace

---

[2] Civil Code section 3346, subdivision (a) provides: "For wrongful injuries to timber, trees, or underwood upon the land of another, or removal thereof, the measure of damages is three times such sum as would compensate for the actual detriment, except that where the trespass was casual or involuntary, or that the defendant in any action brought under this section had probable cause to believe that the land on which the trespass was committed was his own or the land of the person in whose service or by whose direction the act was done, the measure of damages shall be twice the sum as would compensate for the actual detriment, and excepting further that where the wood was taken by the authority of highway officers for the purpose of repairing a public highway or bridge upon the land or adjoining it, in which case judgment shall only be given in a sum equal to the actual detriment."

[3] Section 733 provides: "Any person who cuts down or carries off any wood or underwood, tree, or timber, or girdles or otherwise injures any tree or timber on the land of another person, or on the street or highway in front of any person's house, village, or city lot, or cultivated grounds; or on the commons or public grounds of any city or town, or on the street or highway in front thereof, without lawful authority, is liable to the owner of such land, or to such city or town, for treble the amount of damages which may be assessed therefor, in a civil action, in any Court having jurisdiction."

the cypress, appraised damages using the "replacement method within the cost-of-cure method." He priced a 28-foot-tall, 108-inch "box" replacement tree at $21,266, then added the cost of tree removal, stump grinding, planting, irrigation, and 10 years of maintenance to arrive at an "unfactored, uncompounded value" of $37,483. Following the eighth edition of the Council of Tree and Landscape Appraisers, Guide for Plant Appraisal (1994), he then compounded this number over the 10 years he expected the replacement tree would need before it could play the same role as the damaged cypress. Choosing 5 percent as the compounding interest rate, Moritz calculated the "total compounded appraised unfactored loss" at $59,428.

Costa's expert, Lichter, believed that in this case, where no tree as large as the one damaged could be bought, the "trunk formula method" outlined in the ninth edition of the Council of Tree and Landscape Appraisers, Guide for Plant Appraisal (2000) should apply. Under this method, Lichter started with the $1,000 cost to install the largest Monterey cypress tree commonly available, a 24-inch box tree. Next, he calculated a "base" value for the damaged tree of approximately $79,000 by comparing the size and cost of the 24-inch box tree with the size of the damaged tree. He then discounted the base value to $20,000 by multiplying it by three percentages: one for the kind of species (50 percent), one for the tree's condition before damage (69 percent), and one for the tree's location (73 percent).[4] He next multiplied the discounted base value by 30 percent, the percentage of canopy Guifarro had removed. Finally, he added $1,530, the cost of further pruning to remove dead and diseased wood, top heavy limbs for balance, and make the most of the tree's compromised aesthetics. All told, Lichter's damages appraisal was $7,530.

The trial court filed its statement of decision on February 22, 2010. It first found Costa vicariously liable for the damage Guifarro inflicted on Rony's cypress. It next found Rony's "damages are measured by the analysis of defendant's expert witness John Lichter in the amount of $7,530." "This conclusion," reasoned the court, "is based on the Court's evaluation of plaintiff's expert claim that the tree must be removed and replaced against Mr. Lichter's more compelling testimony that the tree does not have to be removed but that plaintiff should be compensated in the amount equal to the

---

[4] The location factor is the average of the tree's site, contribution, and placement ratings. A site rating accounts for the value of the property the tree occupies and the level of maintenance of the landscape. The contribution and placement ratings account for the tree's function—whether, for example, it shields a home, attracts wildlife, prevents erosion, or functions as a "specimen" tree.

value of the tree multiplied by the percentage of the tree removed by Guifarro." But, continued the court, this amount "does not fully compensate plaintiff for all the detriment proximately caused by defendant's trespass because she is left with a tree that is less of a prominent feature in her yard with less character and some diminished amount of shade." It therefore awarded an additional $15,000 in actual damages for a total of $22,530. The court then doubled Rony's actual damages under Civil Code section 3346, denied additional damages for discomfort and annoyance, and awarded total damages to Rony of $45,060.[5] Judgment was entered in Rony's favor on March 25, 2010, and Costa filed a notice of appeal on May 18, 2010.

Rony subsequently filed a motion for attorney fees under section 1029.8, which permits an award of fees in suits against certain unlicensed persons who cause injury by performing services for which a license is required. She had not alleged any entitlement to attorney fees in her complaint, and first requested fees in her October 26, 2009 trial brief. Costa opposed the motion on the grounds section 1029.8 was inapplicable and Rony's fee request was excessive. The trial court granted Rony's motion, reduced the fees sought by 20 percent because of the simplicity of the case and the fact she had already been awarded double damages, and awarded her $50,148 in attorney fees. Costa filed a notice of appeal from the fee award on June 18, 2010. Rony also appealed, claiming she was entitled to all the fees she had requested. On July 28, 2010, we consolidated the merits and attorney fees appeals.

DISCUSSION

*Amount of Actual Damages*

Costa first takes issue with the trial court's calculation of actual damages. He contends the trial court, having adopted Lichter's methodology and appraisal amount of $7,530, erred in awarding Rony an additional $15,000.

Whether a plaintiff "is entitled to a particular measure of damages is a question of law subject to de novo review. [Citations.] The amount of damages, on the other hand, is a fact question . . . [and] an award of damages will not be disturbed if it is supported by substantial evidence." (*Toscano v. Greene Music* (2004) 124 Cal.App.4th 685, 691 [21 Cal.Rptr.3d 732].) We

---

[5] The trial court found Costa had not acted with intent to vex, annoy or harass and therefore awarded double damages under Civil Code section 3346, rather than treble damages under that statute or Code of Civil Procedure section 733. (See *Drewry v. Welch* (1965) 236 Cal.App.2d 159, 180–181 [46 Cal.Rptr. 65].)

make " '[a]ll presumptions favor the trial court's ruling, which is entitled to great deference because the trial judge, having been present at trial, necessarily is more familiar with the evidence and is bound by the more demanding test of weighing conflicting evidence rather than our standard of review under the substantial evidence rule. . . . [W]e do not reassess the credibility of witnesses or reweigh the evidence. To the contrary, we consider the evidence in the light most favorable to the judgment, accepting every reasonable inference and resolving all conflicts in its favor.' " (*Kelly v. CB&I Constructors, Inc.* (2009) 179 Cal.App.4th 442, 452 [102 Cal.Rptr.3d 32], citations omitted.) "The evidence is insufficient to support a damage award only when no reasonable interpretation of the record supports the figure." (*Toscano v. Greene Music, supra,* 124 Cal.App.4th at p. 691.)

■ The measure of damages for tortious injury to property, including trees, "is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." (Civ. Code, § 3333; see *Heninger v. Dunn* (1980) 101 Cal.App.3d 858, 861 [162 Cal.Rptr. 104].) "Such damages are generally determined as the difference between the value of the property before and after the injury." (*Id.* at pp. 861–862; see Rest.2d Torts, § 929, com. f, p. 547 ["[f]or the destruction of or damage to . . . mature timber trees that have a market value or a value distinguishable from the value of the land, the owner can, at his election, recover for the loss or diminution of the value of the thing injured or destroyed . . ."].)

But "[d]iminution in market value . . . is not an absolute limitation; several other theories are available to fix appropriate compensation for the plaintiff's loss." (*Heninger v. Dunn, supra,* 101 Cal.App.3d at p. 862.) " 'There is no fixed, inflexible rule for determining the measure of damages for injury to, or destruction of, property; whatever formula is most appropriate to compensate the injured party for the loss sustained in the particular case, will be adopted.' " (*Ibid.*; see 6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, §§ 1727–1728, 1732–1733.) For instance, one alternative measure of damages is the cost of restoring the property to its condition prior to the injury, and a plaintiff may recover these costs even if they exceed diminution in value if there is a personal reason for restoration. (*Heninger v. Dunn,* at p. 862; see *Kelly v. CB&I Constructors, Inc., supra,* 179 Cal.App.4th at p. 450; *People v. Southern Pacific Co.* (1983) 139 Cal.App.3d 627, 635 [188 Cal.Rptr. 913].)

The trial court opted for a diminution in value measure of damages over a replacement cost measure. It took the $7,530 damages estimate from Costa's expert, Lichter, as a starting point. To be sure, as Costa contends, this number incorporated Lichter's trunk formula method calculation, which in turn incorporated a "location factor," meaning Lichter's number had some correlation to the cypress tree's former contributions of shade and its use as a

boundary tree. Nonetheless, the trial court found Lichter's number did "not fully compensate plaintiff for all the detriment proximately caused by defendant's trespass because she is left with a tree that is less of a prominent feature in her yard with less character and some diminished amount of shade." It therefore awarded the additional $15,000 in actual damages Costa now disputes.

We note, when considering the diminished value of an injured tree, the finder of fact may account for lost aesthetics and functionality. (See *Heninger v. Dunn, supra*, 101 Cal.App.3d at p. 865 ["If restoration of the land to a reasonable approximation of its former condition is impossible or impracticable, the landowner may recover the value of the trees or shrubbery, either as timber *or for their aesthetic qualities . . . .*" (italics added)]; *Hassoldt v. Patrick Media Group, Inc.* (2000) 84 Cal.App.4th 153, 168 [100 Cal.Rptr.2d 662] [same]; *Baker v. Pierce* (1950) 100 Cal.App.2d 224, 227 [223 P.2d 286] [damages evidence allowed to show harm to trees "grown for their ornamental and shade value in connection with the motel property"]; cf. *Metz v. Soares* (2006) 142 Cal.App.4th 1250, 1257 [48 Cal.Rptr.3d 743] [damages for loss of use possible].)[6]

The trial court's award of an additional $15,000 for loss of aesthetics was supported by substantial evidence. Rony's testimony, corroborated by photographs and the experts' testimony, demonstrated that while Guifarro may have cut just 30 percent of the cypress, he drastically reduced the tree's aesthetics and compromised its ability to provide shade. Lichter's trunk formula method may account for a tree's placement and condition in a utilitarian sense, but Lichter did not testify that method fully accounted for the intangible, but very real, loss in aesthetic pleasure to Rony. Thus, the trial court could have rationally concluded a further award was necessary to compensate Rony for the well-established aesthetic loss.

Alternatively, the trial court may have viewed Lichter's $7,530 figure as including some, but insufficient, compensation for lost aesthetics. The finder of fact is only required to give expert testimony on damages the weight it believes it deserves, and remains entitled to make the final determination. (*People v. Southern Pacific Co., supra*, 139 Cal.App.3d at p. 636 [" 'The trier of fact may accept the evidence of any one expert or choose a figure between

---

[6] Courts in other states agree. (See, e.g., *State v. Singer* (2006) 180 Vt. 104, 108–109 [904 A.2d 1184] ["the comfort and aesthetic value provided by 'trees that have no direct commercial value' can also serve as a legitimate element of damages in cases involving the destruction of trees"]; *Howes v. Rocquin* (La.Ct.App. 1984) 457 So.2d 1220, 1223 ["the award of $2500.00 for loss of aesthetic value is appropriate in this case"].)

them based on all of the evidence.' "].) We simply do not share Costa's view of the $15,000 award as double recovery, as opposed to complete recovery, and we will not presume the trial court failed in this regard absent a clear showing from Costa. (See *People v. Aragon* (1992) 11 Cal.App.4th 749, 765 [14 Cal.Rptr.2d 561] ["in the absence of contrary evidence the trial court is presumed to have followed the law"].)

■ Although Rony never quantified the loss of aesthetics at $15,000, she need not have done so. As with other hard-to-quantify injuries, such as emotional and reputational ones, the trier of fact court was free to place any dollar amount on aesthetic harm, unless the amount was " 'so grossly excessive as to shock the moral sense, and raise a reasonable presumption that the [trier of fact] was under the influence of passion or prejudice.' " (*Seffert v. Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 506–509 [15 Cal.Rptr. 161, 364 P.2d 337] [affirming award of hard-to-measure emotional distress damages]; *Weller v. American Broadcasting Companies, Inc.* (1991) 232 Cal.App.3d 991, 1011–1014 [283 Cal.Rptr. 644] [affirming awards for reputational and emotional harms].) Given the hack job Guifarro inflicted on Rony's tree while trespassing on her property, we do not find the trial court's award "shocking" and will not second-guess the amount the trial court selected after carefully considering the evidence before it.

*Attorney Fees*

Costa next contends section 1029.8 is inapplicable and the trial court erred in awarding attorney fees to Rony under its provisions. Costa's challenge presents a question of statutory interpretation which we review de novo. (See *Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1250 [140 Cal.Rptr.3d 173, 274 P.3d 1160] (*Kirby*).)

■ Section 1029.8 provides in pertinent part: "(a) *Any unlicensed person* who causes injury or damage to another person as a result of providing goods or performing services for which a license is required under . . . Division 3 (commencing with Section 5000) . . . of the Business and Professions Code . . . *shall be liable to the injured person* for treble the amount of damages assessed *in a civil action* in any court having proper jurisdiction. The court may, in its discretion, award all costs and attorney's fees to the injured person if that person prevails *in the action*. [¶] . . . [¶] (c) The additional damages provided for in subdivision (a) shall not exceed ten thousand dollars ($10,000). [¶] (d) For the purposes of this section, the term 'unlicensed person' shall not apply to any of the following: [¶] (1) Any person, partnership, corporation, or other entity providing goods or services under the good faith belief that they are properly licensed and acting within

the proper scope of that licensure. . . ."[7] (§ 1029.8, italics added.) The fee provision in the second sentence of subdivision (a) thus harkens back to and compliments the immediately preceding sentence of that subdivision, authorizing treble damages in a civil action against "any unlicensed person" whose work injures another person.

Together, the treble damages and attorney fees provisions of section 1029.8 provide a potent civil remedy, with penal attributes. (See *G.H.I.I. v. MTS, Inc.* (1983) 147 Cal.App.3d 256, 277 [195 Cal.Rptr. 211] ["[T]he settled rule in California is that statutes which provide for recovery of damages additional to actual losses incurred, such as double or treble damages, are considered penal in nature . . . ."]; see also *Menefee v. Ostawari* (1991) 228 Cal.App.3d 239, 244 [278 Cal.Rptr. 805] [characterizing § 37.9 of San Francisco's rent control ordinance, which mandates treble damages and attorney fees, as penal in nature for purpose of determining applicable statute of limitations].) But by its plain terms, this potent combination of treble damages and a potential attorney fee award, lies only against "[a]ny unlicensed person . . . providing goods or performing services for which a license is required . . . ." (§ 1029.8, subd. (a).) Thus, assuming a license was required to do the tree trimming at issue here, section 1029.8 would have applied to an action against Guifarro, had Rony sued him.

The statute contains no language, however, extending its reach to those who "use" the services of unlicensed persons. Had the Legislature intended the statute, and specifically the provision for attorney fees, to reach anyone using the services of an unlicensed person and sued for damages under a different statute, it could have said so. (See *Kirby, supra*, 53 Cal.4th at p. 1255 [neither plain text, statutory history nor related statutes indicated Lab. Code, § 1194 authorized fee award in a Lab. Code, § 226.7 action; "it is up to the Legislature to decide whether section 1194's one-way fee-shifting provision should be broadened to include section 226.7 actions"]; see also *In re Jose D.* (1990) 219 Cal.App.3d 582, 587 [268 Cal.Rptr. 364] ["If the Legislature had intended this statute to have a broader scope, it is likely the Legislature would have" so stated.].)

Not only does section 1029.8 contain no such expansive language, it also expressly limits who is an "unlicensed person" for purposes of the statute. (§ 1029.8, subd. (d).) Thus, the Legislature took considerable care in setting its bounds.

---

[7] The licensing requirements of division 3 of the Business and Professions Code apply to an extensive range of contractors and providers, including architects (chapter 3), interior designers (chapter 3.9), attorneys (chapter 4), engineers (chapter 7), and contractors (chapter 9). Division 3, chapter 9 contains section 7026.1, which, both parties agree subjects tree removers and pruners to licensing requirements if operating on trees 15 feet or taller. (Bus. & Prof. Code, § 7026.1, subd. (d).)

We further observe that in the criminal context, the Legislature's use "of the words 'any person' "—as the Legislature used in section 1029.8 ("[a]ny unlicensed person")—"sufficiently communicates its intent to impose only direct liability, especially given the number of cases which state these words imply direct liability and not vicarious liability." (*People v. Rener* (1994) 24 Cal.App.4th 258, 267 [29 Cal.Rptr.2d 392]; see *In re Jose D.*, *supra*, 219 Cal.App.3d at p. 587 [" ' "any person who inflicts" ' " does not include an aider or abettor].) Given the penal attributes of section 1029.8, this observation reinforces what the plain language of the statute conveys—that it pertains specifically to, and only to, unlicensed persons sued for treble damages in a civil action under the provisions of that statute.

In addition, at the same time it enacted section 1029.8, the Legislature also enacted Insurance Code section 253, which provides "[o]n and after January 1, 1986, no insurer shall issue or amend contracts of insurance in this state to provide coverage for the payment of any damages awarded to a person because of Section 1029.8 of the Code of Civil Procedure." (Ins. Code, § 253; Stats. 1985, ch. 895, § 2, p. 2863.) Thus, the Legislature effectively doubled the club that can be brought to bear against unlicensed service providers and contractors. Not only are these persons subject to significant monetary awards, but they also cannot insure against them. This additional sting to section 1029.8 is further reason not to stray from the language of the statute as written by the Legislature. Absent explicit language by the Legislature, we will not presume it intended that any homeowner using an unlicensed service provider or contractor will both incur significant economic losses and be bereft of insurance coverage for their poor judgment or even unwitting ignorance.

■ The trial court relied on the general respondeat superior statute (Civ. Code, § 2338)[8] to conclude Costa was "vicariously liable for all damages proximately caused by Guifarro's torts," and on that basis ordered Costa to pay Rony's attorney fees under section 1029.8. However, the statutory attorney fees authorized by section 1029.8 are not "damages"—in the trial court's parlance—resulting from Guifarro's actions. (See *Lozada v. City and County of San Francisco* (2006) 145 Cal.App.4th 1139, 1160 [52 Cal.Rptr.3d 209] ["When authorized by statute, awards of attorney fees are defined as costs, not damages."].)

---

[8] Civil Code section 2338 provides in relevant part: "[A] principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business . . . ."

█ Further, while principals may be *liable* for injuries caused by an agent under Civil Code section 2338, they do not necessarily face the same *remedies* as the agent. For example, "punitive damages are not assessed against employers on a pure respondeat superior basis." (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 724, fn. 11 [34 Cal.Rptr.2d 898, 882 P.2d 894], italics omitted; *Ebaugh v. Rabkin* (1972) 22 Cal.App.3d 891, 895 [99 Cal.Rptr. 706] ["It is well settled that while an employer may be held liable for an employee's tort under the doctrine of respondeat superior, he is not responsible for punitive damages where he neither directed nor ratified the act." (italics omitted)]; see Civ. Code, § 3294, subd. (b).) Rather, exemplary damages may be assessed directly against a principal only under specific statutory authority and in delineated circumstances. (See, e.g., Civ. Code, § 3294, subd. (b).)[9] Thus, the Legislature knows how to impose remedies, including those that are punitive in character, on principals in the respondeat superior context. It has not, however, similarly singled out those using the services of unlicensed contractors and service providers to bear the punitive burden of a treble damages award plus the potential for an attorney fee award under section 1029.8.

Accordingly, the respondeat superior statute, in and of itself, does not provide the means to graft an award of attorney fees onto Civil Code section 3346 (the wrongful injuries to timber statute) from the provisions of section 1029.8. (See § 1021 [no fees unless "specifically provided for by statute"]; see also *Kirby, supra,* 53 Cal.4th at pp. 1248, 1255; *21st Century Ins. Co. v. Superior Court* (2009) 47 Cal.4th 511, 531 [98 Cal.Rptr.3d 516, 213 P.3d 972] (conc. opn. of Kennard, J.).) Indeed, Rony cites no case that invokes the general respondeat superior statute, alone, to authorize an award of statutory attorney fees under a statute (like Civ. Code, § 3346) that otherwise has no applicable fee provision.

We thus conclude section 1029.8 is inapplicable and reverse the award of attorney fees.[10]

---

[9] Civil Code section 3294, subdivision (b) provides: "An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."

[10] We therefore do not consider Rony's cross-appeal, challenging the amount of the trial court's fee award.

## Disposition

The judgment awarding damages to Rony is affirmed. The subsequent order awarding her attorney fees under section 1029.8 is reversed. Each party shall bear its own costs on appeal.

Marchiano, P. J., and Dondero, J., concurred.