Filed 10/7/13  Bermudo v. Tahmassebi CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ISMAEL BERMUDO, JR., | B240892 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YC059960) |
| v. | |
| FARHAD TAHMASSEBI et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. William G. Willett, Judge.  Affirmed.

John Schlanger, for Defendants and Appellants Farhad Tahmassebi and Euro American Auto Co., Inc.

Law Offices of Philip Landsman and Philip Landsman, for Plaintiff and Respondent Ismael Bermudo.

_____

Ismael Bermudo filed suit against Farhad Tahmassebi and Euro American Auto Co., Inc. (Euro; collectively defendants) for damages arising out of Bermudo's purchase of an automobile. In brief, although defendants were obligated to pay off the balance of a loan used to finance Bermudo's trade-in vehicle, they did not pay off the loan. As a result, Bermudo was subject to collections efforts by the bank holding the loan, his credit score declined, and he was forced to file suit against the bank and defendants. Following a bench trial, the court entered judgment in Bermudo's favor and awarded him $31,760 in damages. On appeal, defendants argue insufficient evidence supported the court's liability findings on claims for fraud and unlawful business practices, and the damages award was not supported by substantial evidence. We affirm the trial court judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2008, Bermudo decided to purchase a used Mercedes Benz SL500 (SL500) from Euro. He arranged with Euro to trade in his old vehicle, a Mercedes Benz 430CLK (430CLK). Bermudo had financed the purchase of 430CLK and still owed Capital One Bank $31,760 on the loan (Capital One loan). To facilitate the purchase of the SL500, Euro drew up a contract providing Bermudo would finance over $64,000. Euro told Bermudo that of the over $64,000 "purchase price," $31,760 was to pay off the loan on the 430CLK. Bermudo agreed, understanding that he would no longer be responsible for the loan on the 430CLK. He gave Euro the keys to the 430CLK, and took the keys for the SL500. Tahmassebi was then President of Euro. He was involved in arranging the financing for Bermudo's transaction.

Despite the arranged financing, and Euro's agreement to pay off the outstanding loan balance on the 430CLK, Euro did not pay off the Capital One loan. Euro paid approximately $8,000 on the loan balance. In June 2008, Capital One sent Bermudo a letter indicating he owed money on the 430CLK loan. Bermudo called Capital One to inform the bank he had traded in the car. Bermudo also called Euro and spoke to Tahmassebi. Tahmassebi said he would take care of the problem. In August 2008, Euro sent Capital One a check for the remaining loan balance, but the check was rejected due to insufficient funds. At some point, despite the outstanding loan balance, Capital One

2

sent Euro the title for the 430CLK. In or around September 2008, Euro resold the car to a third party.

Meanwhile, in September 2008, Bermudo began receiving monthly account summaries from Capital One demanding that he make payments. The Capital One collections department began handling the matter. Bermudo repeatedly attempted to clear up the situation. By February 2009, Bermudo was receiving regular written correspondence and telephone calls from Capital One, demanding payment. Bermudo tried calling Tahmassebi, but was unable to reach him. Tahmassebi did not respond to Bermudo's calls. Bermudo sent letters to Euro, but received no response. In January 2009, Capital One turned the file over to NCO Financial Systems, Inc., a collections agency. The delinquent account was reported to the credit reporting agencies. Bermudo's credit score dropped over 100 points.

Finally, Bermudo hired counsel and filed suit against Capital One and defendants. He reached a resolution with Capital One in or around November 2009. As part of the settlement, Capital One paid him $3,000 and deleted the "negative remarks" from his credit history. Bermudo paid the $3,000 to his attorneys. As of February 2011, Bermudo's credit score had returned to its pre-incident level.

By early January 2012, Bermudo had paid over $23,029 in legal fees, and still owed an additional $3,852. He was unable to pay counsel to represent him at the one-day bench trial. At trial, defendants did not deny they failed to pay off the loan for the 430CLK, as they had agreed. Tahmassebi testified Euro did not complete the payoff because of "financial difficulty," but claimed it intended to make the payment when it entered into the contract with Bermudo. Defendants' counsel argued there was no evidence of fraud, and Bermudo had not established he sustained any recoverable damages or proved their amount.

Neither party requested a statement of decision. In a brief written ruling, the trial court found Euro liable for damages on all causes of action pled in the complaint.[1] The court found Tahmassebi liable for fraud and unlawful business practices under Business and Professions Code section 17200. The court explained that under "Vehicle Code section 11711, [subdivision] (a) . . . a person shall have a right of action against a dealer, *his salesman,* and the surety upon the dealer's bond for any fraud practiced on him or fraudulent representation made to him by a licensed dealer or one of such dealer's salesmen acting for the dealer, for failure to pay for a vehicle. Damages shall not exceed the value of the vehicle sold to the dealer." The court concluded Tahmassebi acted as a "salesman."

The court found defendants' actions caused a decrease in Bermudo's credit score, and caused him emotional distress and inconvenience. The court further found Bermudo proved damages of $31,760, and was entitled to attorney fees and costs. Defendants timely appealed from the judgment.

## DISCUSSION

I. **Substantial Evidence Supported the Findings of Fraud and Violation of Business and Professions Code section 17200**

On appeal, defendants contend that while the evidence may have demonstrated Euro breached the contract with Bermudo, there was no evidence of fraud. This contention is meritless. "We review a challenge to the trial court's factual findings under the substantial evidence test. [Citations.] We presume the record contains evidence sufficient to support the judgment, consider the evidence in the light most favorable to the judgment, and resolve all conflicts in favor of the judgment. [Citation.]" (*County of San Bernardino v. Walsh* (2007) 158 Cal.App.4th 533, 540, fn. omitted.)

---

[1] Bermudo's first amended complaint asserted claims under the Automobile Sales Finance Act, the Consumer Legal Remedies Act, and Business and Professions Code section 17200, as well as claims for breach of contract, fraud, negligent misrepresentation, and negligence.

4

Here, the evidence established defendants agreed Euro would pay off the balance of the loan outstanding on the 430CLK as part of the transaction in which Bermudo purchased the SL500. The evidence was undisputed that despite this agreement, defendants did not immediately pay off the Capital One loan after the contract was entered, and they received the financed amount of over $64,000. The court could reasonably infer from this evidence that defendants never intended to pay off the Capital One loan, as agreed. The court was free to find not credible Tahmassebi's testimony to the contrary. It was also undisputed that defendants sent Capital One a bad check. There was no evidence offered suggesting this was due to mistake or ignorance. There was also evidence that defendants resold the 430CLK, but still did not pay off the Capital One loan. There was uncontradicted evidence that Tahmassebi deliberately avoided Bermudo's communications about the Capital One loan. Bermudo eventually had no choice but to sue Capital One and defendants, thus incurring significant legal fees. Indeed, the evidence was overwhelming that defendants misrepresented that they would pay off the Capital One loan after receiving the funds Bermudo borrowed as part of the SL500 transaction; they knew they had no intention of doing so; they intended to induce Bermudo to rely on that misrepresentation to enter the contract for the SL500; Bermudo justifiably relied on the misrepresentation; and he was damaged thereby. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

Similarly, there was substantial evidence of defendants' liability for unlawful, unfair, or fraudulent business practices or acts under Business and Professions Code section 17200. The evidence identified above was sufficient to establish defendants' actions were a "business act or practice." (*Klein v. Earth Elements, Inc.* (1997) 59 Cal.App.4th 965, 968.) Moreover, as the trial court concluded, Vehicle Code section 11711, subdivision (a) creates a private right of action for any person suffering loss or damage by reason of any fraud or fraudulent representation made by a licensed dealer or dealer's salesman, when there is a contract furnished by the dealer and containing terms the dealer has violated. Liability under Business and Professions Code section 17200 could be premised on this Vehicle Code provision. (*Farmer Ins. Exchange v. Superior*

5

*Court* (1992) 2 Cal.4th 377, 383; *People v. James* (1981) 122 Cal.App.3d 25, 35.)

On appeal, defendants argue the only evidence of an unlawful business practice offered at trial concerned the value of the SL500, and there was no evidence that the stated price of $59,000 was inaccurate. This argument fails. Irrespective of the value of the SL500, the evidence established that, pursuant to the parties' agreement, defendants were required to pay off the Capital One loan on the 430CLK, the over $64,000 would have more than covered the outstanding loan balance, defendants did not use the money to pay off the loan, leaving Bermudo responsible for an obligation defendants had contracted to assume. We reject the contention that this was not an unlawful, unfair, or fraudulent business act.

## II. Substantial Evidence Supported the Damages Award

The trial court awarded Bermudo $31,760, exclusive of attorney fees and costs. Defendants contend the damages award was not supported by substantial evidence. We disagree.

Bermudo's operative complaint sought "general, special, and actual damages"; "incidental and consequential damages"; restitution of monies expended; rescission of the purchase contract; injunctive relief; "punitive and statutory damages"; and reasonable attorney fees and costs. At trial, Bermudo confirmed he was seeking damages for mental suffering and damage to his reputation. In its ruling, the court noted defendants' actions caused a decrease in Bermudo's credit scores "as well as emotional distress and inconvenience to Plaintiff." The court concluded Bermudo proved damages in the sum of $31,760.

On appeal, defendants argue no substantial evidence supported the amount of the damage award. However, we conclude there was sufficient evidence to support an award of damages for emotional distress.

"In order to recover damages for emotional distress, the injury suffered must be severe, i.e., substantial or enduring as distinguished from trivial or transitory. [Citation.] Such injury may include ' "all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and

6

nausea." [Citation.]' [Citation.]" (*Young v. Bank of America* (1983) 141 Cal.App.3d 108, 114 (*Young*).) The factfinder—in this case, the trial court—is allowed significant discretion in awarding emotional distress damages. We must uphold an award of damages whenever possible. (*Westphal v. Wal-Mart Stores, Inc.* (1998) 68 Cal.App.4th 1071, 1078.) " 'The evidence is insufficient to support a damage award only when no reasonable interpretation of the record supports the figure.' [Citation.]" (*Rony v. Costa* (2012) 210 Cal.App.4th 746, 754 (*Rony*).) Even where there is little direct evidence of emotional distress, the circumstances of the defendant's unlawful actions may support inferences as to the nature and extent of the emotional distress.

Thus, as Bermudo points out on appeal, in *Green v. Rancho Santa Margarita Mortgage Co.* (1994) 28 Cal.App.4th 686, the husband plaintiff in a housing discrimination case testified he was angered by the discriminatory acts, he may have taken a Tylenol, and his wife drank " 'Maalox by the bottle.' " (*Id.* at p. 699.) The appellate court determined this testimony, when considered in the context of the case, was sufficient for the jury to find emotional distress. The plaintiffs, a married couple, were attempting to move to a safer neighborhood and had spent years working and saving to find a secure place to live. The court thus concluded: "There was no legal requirement that the jury limit its consideration of emotional distress to just [plaintiff's] immediate reaction and a few bottles of Maalox. The jury could have considered the importance of the home purchase for the [plaintiffs] in the context of the long hours and years of hard work that had gone into being able to make the leap from Compton to Coto de Caza. Given such evidence, the jury would have been amply justified to base the entirety of its award on emotional distress alone." (*Id.* at p. 700.)

Here, the record established Bermudo expended significant time and energy attempting to remedy the effects of defendants' fraudulent conduct. He detailed his numerous attempts to contact defendants, and their refusal to respond. He also described the constant demands for payment from Capital One and its collection agency, and the significant decline in his credit rating, which he was apparently monitoring. The ordeal lasted months, leading Bermudo to eventually retain counsel. A settlement with Capital

7

One was not reached until well over a year after Bermudo received the first letter from Capital One indicating he still owed the bank money. The trial court could justifiably interpret Bermudo's conduct in response to defendants' actions as an indication of his humiliation, frustration, worry, and eventual desperation. The court could reasonably find Bermudo suffered significant emotional distress, as would any reasonable person under such circumstances. (See *Young, supra,* 141 Cal.App.3d at p. 115; *Rony, supra,* 210 Cal.App.4th at p. 756.) And, as in *Green*, given the evidence, the trial court could properly base the entire damages award on emotional distress. Thus, we need not consider defendants' remaining arguments regarding the damages award.

## DISPOSITION

The judgment is affirmed. Respondent shall recover his costs on appeal.


BIGELOW, P. J.

We concur:



RUBIN, J.



GRIMES, J.

8