Filed 8/31/16  Tetzner v. Hippler CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ALFRED TETZNER et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>ROBIN HIPPLER, JR.,<br><br>        Defendant and Appellant. | A140643<br><br>(San Mateo County<br>Super. Ct. No. CIV513134) |

Plaintiffs Alfred and Kay Tetzner and defendant Robin Hippler share a backyard property line.  In 2011, Hippler pruned three trees in the Tetzners' backyard without their permission.  The Tetzners sued Hippler and two of his sisters, alleging trespass, wrongful injuries to trees, and negligence.  Hippler's sisters settled with the Tetzners before trial for $20,000.  After a jury trial against Hippler only, the jury found in favor of the Tetzners, awarding them $3,115.83 in economic damages and $17,884.18 in noneconomic damages.  The trial court doubled the entire award of $21,000.01 pursuant to Civil Code section 3346 (section 3346).

On appeal, Hippler contends the trial court erred, first, in doubling the noneconomic damages and, second, in not allowing a setoff for a portion of the settlement amount from Hippler's sisters.  The Tetzners cross-appeal, arguing the trial court erred in declining to treble the damages.

We conclude the trial court properly applied the statutory multiplier to the noneconomic damages and did not abuse its discretion in declining to treble the award.

1

We also conclude that Hippler was entitled to a setoff against the award for economic damages.

We remand the matter to the trial court to determine the amount of the judgment and to order payment of costs in light of our decision. In all other respects, the judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1998, husband and wife Alfred and Kay Tetzner bought a property on Beaumont Boulevard in Pacifica. The front had a view of the ocean, and there were three Monterey pine trees growing in the backyard.[1] Hippler has lived on Coral Ridge upslope from the Tetzners' property since 2005.

According to the Tetzners, Hippler asked Kay in 2005 about cutting the three Monterey pine trees in the Tetzners' backyard, and she responded, "Absolutely not. You do not have permission to cut our trees." The Tetzners testified they also placed a note in Hippler's mailbox that read in part, "Under no conditions do we, the owners, allow you or any of your representatives on our property . . . at any time to cut our trees or for any purpose whatsoever." Hippler denied that he asked the Tetzners about cutting their trees in 2005. He testified his real estate agent talked to the Tetzners about the trees, but it was a vague conversation, and the agent "wasn't sure if they said no or yes." Hippler also denied receiving a hand-delivered note from them in his mailbox.

Hippler did not talk to the Tetzners from 2005 to 2011. On November 23, 2011, Hippler's daughter and his sister, Renie Hippler, went to the Tetzners' house and asked for permission to cut the trees. Alfred testified that he told them he could not stop them from trimming a branch hanging over the fence line, but this would require a permit and an arborist to make sure the trees were not harmed. Renie asked, "Can we top the trees in honor of my dead father?" Alfred responded, "Well, absolutely not. No. We will not

---

[1] Kay testified that the trees were one of the reasons they bought the property, and they designed the back of their house around the trees. In the interests of brevity and clarity, we use first names only when referring to either of the Tetzners individually. Similarly, we will refer to Hippler's sisters by first name. No disrespect is intended.

allow you to do that. You cannot step foot on our property." He described Renie as "pressuring" him.

According to Hippler, after his daughter returned from the Tetzners' house, she told him, "You can trim the trees. Just don't kill them. You have to pay for it." Hippler's daughter, who was 15 years old in November 2011, similarly testified that Kay told her and her aunt, "You may cut the trees as much as you like. Just don't kill them."[2]

Without talking to the Tetzners about it, Hippler hired Roel Diaz to cut the trees. On Saturday, December 10, 2011, Diaz and three workers spent five hours removing limbs from the three Monterey pine trees in the Tetzners' backyard. The Tetzners were away from home that day. Sunday morning, Alfred looked out the back windows and discovered his trees "had been destroyed" and there was debris all over the ground. He called the police. The next day, Alfred went to Hippler's house and saw workers loading limbs from his trees onto a truck. There were two women at the house, and one yelled at him. Alfred later identified one of the women as Hippler's sister, Rochelle Hippler.

Alfred testified the heavy pruning of his trees bothered him a lot because he used to enjoy the view in the backyard, but "[t]here is really nothing to look at in my backyard now." Before Hippler had them cut, the three trees grew together and provided a shade canopy, privacy from uphill neighbors, and wind protection. He testified the trees were now useless, providing no shade, no screening, and no wind break. Kay testified the trees were beautiful and "just big and bushy and green and lush" before they were pruned. The Tetzners' expert arborist testified the branches cut off the Monterey pine trees would never grow back, and the Tetzners "were not going to have privacy again from these trees."

---

[2] She further explained that she wanted to get permission to cut the trees as a birthday present for her father. When she told Hippler the Tetzners had given them permission to cut the trees, she said, "Hey dad. You can have your ocean view."

3

On April 12, 2012, the Tetzners filed a complaint against Hippler and Renie. They later amended their complaint to add Rochelle as a defendant.[3]  The complaint alleged the defendants, either directly or through their agents, willfully trespassed on the Tetzners' property and damaged three mature pine trees.  The complaint asserted four causes of action against all defendants: (1) trespass, (2) wrongful injury to trees (§ 3346),[4] (3) wrongful injury to trees (Code Civ. Proc., § 733),[5] and (4) negligence.

On May 15, 2013, at the mandatory settlement conference, the Tetzners reached a settlement agreement with Hippler's sisters.  Without admitting liability, Renie and Rochelle each agreed to pay $10,000 in exchange for a release by the Tetzners from all claims "resulting from the alleged trespass, wrongful injuries to trees and other property damage, and negligence arising out of an incident or incidents that occurred in November and December of 2011 on or about [the Tetzners'] property . . . ."

---

[3] The original complaint also named defendant "Amelia R. Hippler."  The Tetzners later dismissed "Amelia R. Hippler."

[4] Subdivision (a) of section 3346 provides:  "For wrongful injuries to timber, trees, or underwood upon the land of another, or removal thereof, the measure of damages is three times such sum as would compensate for the actual detriment, except that where the trespass was casual or involuntary, or that the defendant in any action brought under this section had probable cause to believe that the land on which the trespass was committed was his own or the land of the person in whose service or by whose direction the act was done, the measure of damages shall be twice the sum as would compensate for the actual detriment, and excepting further that where the wood was taken by the authority of highway officers for the purpose of repairing a public highway or bridge upon the land or adjoining it, in which case judgment shall only be given in a sum equal to the actual detriment."

[5] Code of Civil Procedure section 733 provides:  "Any person who cuts down or carries off any wood or underwood, tree, or timber, or girdles or otherwise injures any tree or timber on the land of another person, or on the street or highway in front of any person's house, village, or city lot, or cultivated grounds; or on the commons or public grounds of any city or town, or on the street or highway in front thereof, without lawful authority, is liable to the owner of such land, or to such city or town, for treble the amount of damages which may be assessed therefor, in a civil action, in any Court having jurisdiction."

On May 23, 2013, Hippler made an offer to compromise under Code of Civil Procedure section 998 (998 offer) in the amount of $45,000.  The 998 offer was not accepted, and a jury trial commenced in June 2013.

Following an eight-day trial, the jury reached a verdict in favor of the Tetzners. By special verdict form, the jury found that Hippler "intentionally, recklessly, or negligently" entered the Tetzners' property and "cut down or damage[d]trees/t[ook] timber located on the property," and that the Tetzners had not given Hippler permission to do so.  The jury awarded economic damages of $3,115.83 and noneconomic damages, "including loss of use, annoyance and discomfort," of $8,942.09 for Alfred and $8,942.09 for Kay.[6]  Asked in the special verdict form whether "Hippler act[ed] willfully and maliciously," the jury responded in the negative.

As relevant to this appeal, the Tetzners filed post-trial motions asking the trial court (1) to apply the statutory multiplier of section 3346 and Code of Civil Procedure section 733 to the jury's award, (2) to establish the Tetzners as the prevailing parties and to find Hippler was not entitled to any setoff based on the settlement with Hippler's sisters, (3) to strike Hippler's memorandum of costs, and (4) to order Hippler to pay their costs.  The Tetzners requested the trial court treble the jury's entire award of $21,000.01 or, at least, double the entire amount.

Hippler requested costs and opposed the Tetzners' motions.  He argued section 3346 entitled the Tetzners to double the economic damages only and, further, Hippler was entitled to a setoff (that is, the economic damages had to be reduced by a portion of the $20,000 settlement from Hippler's sisters attributable to economic damages). Doubling only the economic damages and applying a setoff, Hippler calculated the

---

[6] Hippler's expert in arboriculture used the "trunk formula method" to estimate the damage caused by the pruning of the Tetzners' trees.  (See *Rony v. Costa* (2012) 210 Cal.App.4th 746, 752 (*Rony*).)  He determined the loss in value to the three trees was $3,090.  In post-trial briefing, Hippler noted that $3,090 plus $25.83, which the Tetzners claimed for a broken rain gauge, was $3,115.83.

5

Tetzners' award as under $19,000, well below his 998 offer. Based on his calculations, he requested costs incurred after he made the 998 offer.

The trial court ruled the statutory multiplier of section 3346 applied to both the economic and noneconomic damages, and the jury's award was subject to doubling, not trebling. The court denied Hippler's request for a setoff. The court found the Tetzners were the prevailing parties and the amount of the judgment—the jury's entire award doubled, plus the Tetzners' pre-998 offer costs—exceeded Hippler's 998 offer. The final judgment amount was $47,102.83.

Both Hippler and the Tetzners appealed.

## DISCUSSION

### A. *Doubling damages under section 3346*

Section 3346 provides, "For wrongful injuries to timber, trees, or underwood upon the land of another," in cases "where the trespass was casual or involuntary. . . , the measure of damages shall be twice the sum as would compensate for the actual detriment." (§ 3346, subd. (a).)

Hippler contends the trial court erred in doubling all the damages awarded by the jury because the multiplier provision of section 3346 does not apply to noneconomic damages. The meaning of section 3346 is a question of law, which we review de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432; *Kelly v. CB & I Constructors, Inc.* (2009) 179 Cal.App.4th 442, 460 (*Kelly*).)

"The measure of damages for tortious injury to property, including trees, 'is the amount which will compensate for *all* the detriment proximately caused thereby, whether it could have been anticipated or not.' " (*Rony*, *supra*, 210 Cal.App.4th at p. 754, italics added; see *Kallis v. Sones* (2012) 208 Cal.App.4th 1274, 1279–1280.) Although diminution in market value is often the measure of damages in such cases, " ' "[t]here is no fixed, inflexible rule for determining the measure of damages for injury to, or destruction of, property; whatever formula is most appropriate to compensate the injured party for the loss sustained in the particular case, will be adopted." ' " (*Rony*, at p. 754.)

6

Here, the jury found Hippler's wrongful injuries to trees caused the Tetzners harm. The special verdict form asked the jury to determine the "noneconomic damages including loss of use, annoyance and discomfort" caused by Hippler's conduct. The jury set that amount at $17,884.18.[7] Hippler does not explain why this amount—clearly intended to compensate the Tetzners for harm caused by the Hippler's wrongful injuries to their trees—does not "compensate for the actual detriment" for purposes of section 3346.

*Rony*, *supra*, 210 Cal.App.4th 746, cited by the Tetzners, is instructive. In *Rony*, the defendant Costa and plaintiff Rony were neighbors, and Costa had a laborer cut branches from a large cypress in Rony's yard. Following a bench trial, the trial court awarded Rony actual damages of $22,530. The award was based in part on Costa's expert's valuation of the damage to Rony's tree. Using the trunk formula method, Costa's expert determined the pruning caused $7,530 in damage to Rony's tree. (*Id*. at pp. 750-753.) The trial court found Costa's expert credible, but found his assessment " 'does not fully compensate plaintiff for all the detriment proximately caused by defendant's trespass because she is left with a tree that is less of a prominent feature in her yard with less character and some diminished amount of shade.' " (*Id*. at p. 753.) The trial court therefore awarded Rony an additional $15,000 in actual damages for a total of $22,530. The court then doubled the entire amount under section 3346, although it "denied additional damages for discomfort and annoyance." (*Ibid*.) Costa challenged the trial court's determination of actual damages, and the Court of Appeal affirmed the damages award.

In reaching its conclusion, the court noted, "when considering the diminished value of an injured tree, the finder of fact may account for lost aesthetics and functionality." (*Rony*, *supra*, 210 Cal.App.4th at p. 755.) The court reasoned: "[Costa's expert] Lichter's trunk formula method may account for a tree's placement and condition

---

[7] As the Tetzners point out, Hippler does *not* challenge the jury's determination that his wrongful injuries to trees caused noneconomic harm in the amount specified; nor does he challenge the jury instructions or special verdict form.

7

in a utilitarian sense, but Lichter did not testify that method fully accounted for the intangible, but very real, loss in aesthetic pleasure to Rony.  Thus, the trial court could have rationally concluded a further award was necessary to compensate Rony for the well-established aesthetic loss." (*Ibid*.)  The court further observed, "As with other hard-to-quantify injuries, such as emotional and reputational ones, the trier of fact court was free to place any dollar amount on aesthetic harm, unless the amount was ' "so grossly excessive as to shock the moral sense, and raise a reasonable presumption that the [trier of fact] was under the influence of passion or prejudice." ' " (*Id*. at p. 756.)

*Rony* demonstrates that "actual detriment" for purposes of section 3346 may include the hard-to-quantify injuries of lost functionality and aesthetics, including, in that case, diminished shade and "the intangible, but very real, loss in aesthetic pleasure" to the plaintiff. (*Rony*, *supra*, 210 Cal.App.4th at pp. 753, 755.)

Here, lost functionality and aesthetics were precisely the intangible harm the Tetzners claimed at trial.  Alfred testified the damaged trees no longer provided shade, privacy screening, or wind protection, and the Tetzners both lamented the loss of a prominent aesthetic feature of their backyard.  The special verdict form expressly included "loss of use" as a type of "noneconomic" damage.  Under *Rony*, these damages are recoverable and are subject to section 3346's doubling provision.

Hippler argues *Rony* is distinguishable because the issue there was diminution in value of the damaged tree, not whether noneconomic damages were subject to doubling. He argues, "the Tetzners improperly classify damages for lost aesthetics and functionality as non-economic damages."  Nonetheless, *Rony* stands for the proposition that the type of damages the Tetzners sought at trial are subject to section 3346.  The special verdict form asked the jury to compensate for loss of use as part of the noneconomic damages.  To the extent it may have been more appropriate to classify lost aesthetics and functionality as economic damages, Hippler forfeited this issue by failing to object to the special verdict form on this basis.  (*Kelly*, *supra*, 179 Cal.App.4th at p. 451.)

Hippler's remaining arguments are unpersuasive.  He argues section 3346 "explicitly refers to property damage, not personal tort claims."  But damage to property

8

may include the effect it has on the owner or occupier.  (*Rony*, *supra*, 210 Cal.App.4th at p. 755; see *Kornoff v. Kingsburg Cotton Oil Co.* (1955) 45 Cal.2d 265, 273–274 [damages available for annoyance and discomfort suffered by plaintiffs as a result of injury to the real property].)  Hippler also relies on *U.S. v. Sierra Pacific Industries* (E.D. Cal. 2012) 879 F.Supp.2d 1096.  In that case, the district court denied the defendants' motion for summary judgment.  The court noted that the plaintiff took the position that "the double damages provision of [section] 3346 . . . includes 'the value of the lost timber, reforestation costs, environmental and ecological losses, and suppression costs.' " (*Id*. at p. 1117.)  In this context, the court observed: "Section 3346(a) specifies that '[f]or wrongful injuries to timber, trees, or underwood . . . the measure of damages shall be twice the sum as would compensate for the actual detriment.'  There is no ambiguity in the language of the statute in this regard; it does not provide for double damages for wrongful injuries to timber, trees, or underwood and damages flowing from such injuries, but rather for the actual detriment caused by wrongful injuries to timber, trees or underwood." (*Ibid*.)  Whatever the district court meant by its observation, we do not read it to mean that lost functionality and aesthetic value are not subject to section 3346. Finally, Hippler's citation to a decision of the Fourth District is unpersuasive, first, because the case is unpublished (Cal. Rules of Court, rule 8.1115) and, second, because the decision did not address the issue whether noneconomic damages may be doubled under section 3346.

In sum, we conclude the jury's entire award of $21,000.01 was properly subject to section 3346's doubling provision.

**B.**     *Setoff based on amounts from settling defendants*

Hippler next argues the trial court erred in not allowing a setoff against the award for economic damages based on the portion of the settlement amount from Hippler's sisters that was attributable to economic damages.  This argument has merit.

9

Under Code of Civil Procedure section 877[8] and Civil Code section 1431.2,[9] a nonsettling defendant is entitled to a setoff against an award for economic damages based on amounts paid by settling defendants. The setoff amount is the portion of any settlement "properly attributable to the claims for economic damages resolved at trial." (*Pfeifer v. John Crane, Inc*. (2013) 220 Cal.App.4th 1270, 1318 (*Pfeifer*).) "Settlement payments attributable to non-economic damages[, however,] are not subject to the setoff." (*Greathouse v. Amcord, Inc*. (1995) 35 Cal.App.4th 831, 838 (*Greathouse*).)

"Code of Civil Procedure section 877 does not require any defendant to prove that settling codefendants were in fact liable, only that they were 'claimed to be liable' for the same tort." (*Knox v. County of Los Angeles* (1980) 109 Cal.App.3d 825, 833 (*Knox*).) Thus, in a case in which the jury found the settling defendants *were not liable* for the plaintiff's injuries, the nonsettling defendant was still entitled to a setoff against the award for economic damages based on amounts paid by the settling defendants attributable to economic damages. (*Poire v. C.L. Peck/Jones Brothers Construction Corp.* (1995) 39 Cal.App.4th 1832, 1837, 1841.) This result "satisfies the fundamental goals of section 877, to preclude a double recovery arising out of the same wrong and encourage settlements." (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 516–517.)

"The well accepted framework for calculating settlement credits [i.e., the setoff amount] is found in *Espinoza v. Machonga* (1992) 9 Cal.App.4th 268, 276–277

---

[8] Code of Civil Procedure section 877 provides in relevant part: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, . . .[¶] . . . it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is the greater." (Code Civ. Proc., § 877, subd. (a).)

[9] Civil Code section 1431.2, subdivision (a), provides: "In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount."

[(*Espinoza*)], and *Greathouse*[, *supra*,] 35 Cal.App.4th [at pages] 840–841. When prior recoveries have not previously been allocated in a manner found by the court to be in good faith, the posttrial allocation of prior settlements should mirror the jury's apportionment of economic and non-economic damages." (*Jones v. John Crane, Inc*. (2005) 132 Cal.App.4th 990, 1006.) When settlements address only the claims resolved at trial and the settlement funds do not apportion the funds between the claims resolved at trial, the setoff amount is calculated as follows. "First, the trial court determines . . . the ratio of the economic damages to the total compensatory damages, as awarded at trial. [Citations.] Second, the credit is determined by multiplying the amount of the settlement funds by [this] ratio." (*Pfeifer*, *supra*, 220 Cal.App.4th at pp. 1318–1319.) This is sometimes referred to as the *Espinoza* formula. (E.g., *Rashidi v. Moser* (2014) 60 Cal.4th 718, 725.)

In *Greathouse*, *supra*, 35 Cal.App.4th 831, the plaintiffs settled with 19 defendants, and most of the settling defendants agreed with the plaintiffs to allocate 20 percent of the settlement amount to economic injuries and 80 percent to noneconomic injuries. After trial against the nonsettling defendant, the jury awarded damages of which 74.3 percent was for economic damages and 25.7 percent was for noneconomic damages. (*Id*. at pp. 837-838.) The trial court calculated the setoff to economic damages using the 20 percent apportionment the settling parties agreed to, rather than the *Espinoza* formula. (*Id*. at p. 839.) The Court of Appeal held this was error. The court explained: "When the issue was brought before the court in plaintiffs' post-trial motion, it had already been decided in a fully adversary proceeding—the trial itself. The jury's apportionment of damages between economic and non-economic damages should be *binding* on the trial court." (*Id*. at p. 841, italics added.)

Here, the jury awarded the Tetzners $21,000.01 in damages, of which $3,115.83 was attributable to economic damages. Thus, the jury apportioned about 14.84 percent of the Tetzners' total damages as economic damages. (The result is the same if we consider the entire award doubled under section 3346.) Under the *Espinoza* formula, Hippler was

11

entitled to a setoff against the economic damages of 14.84 percent of the $20,000, or about $2,968.[10]

The trial court, however, did not apply the *Espinoza* formula. At the hearing on the posttrial motions, the trial court explained it was not allowing any setoff because the settling defendants were not "factually responsible for the physical trespass to the property." But whether the settling defendants "were in fact liable" is irrelevant. (*Knox*, *supra*, 109 Cal.App.3d at p. 833; see *McComber v. Wells*, *supra*, 72 Cal.App.4th at p. 517 ["It is irrelevant the jury ultimately found the settling defendants were not negligent"].) Hippler is entitled to a setoff because his sisters, the settling defendants, were "claimed to be liable" for the same torts, not because they were actually liable. (Code Civ. Proc., § 877, subd. (a); *Knox*, at p. 833.) Here, the Tetzners alleged all defendants were liable for every cause of action.

Nor would it matter if the Tetzners and Hippler's sisters intended to allocate the entire settlement to noneconomic damages. As we saw in *Greathouse*, the apportionment between economic and noneconomic damages agreed to by the settling parties is not binding on the court. To the contrary, the *Greathouse* court explained: "[T]he allocation of the settlement proceeds according to the proportions recited in a pretrial settlement agreement is inherently suspect. The negotiated allocation between economic and non-economic damages will inevitably reflect a bias against economic damages that is prejudicial to a nonsettling defendant. The plaintiff has an interest in allocating as little as possible of the settlement to economic damages; the smaller the allocation to economic damages, the less the nonsettling defendants can claim as a credit against a verdict or judgment in the plaintiff's favor. [Citation.] The settling defendants have no incentive to oppose the plaintiffs' allocation because they are entirely unaffected by it." (*Greathouse*,

---

[10] Hippler reaches a slightly different percentage because he takes the position that $25.83 (which he believes was intended to compensate for a broken rain gauge) of the economic damages are not subject to doubling. However, the jury awarded $3,115.83 in economic damages for wrongful injuries to trees. We may not simply ignore the amount of economic damages actually awarded by the jury and instead use an amount Hippler believes makes more sense.

12

*supra*, 35 Cal.App.4th at p. 841.)  The Tetzners describe the negotiations of the settlement agreement as evidence they intended the settlement amounts to represent noneconomic damages only, but their negotiating history is irrelevant to whether Hippler is entitled to a setoff under Code of Civil Procedure section 877 and the *Espinoza* formula.

The final judgment was $47,102.83.  Because we conclude Hippler was entitled to a setoff of $2,968, the judgment must be reduced by that amount.  This in turn, results in a judgment less favorable than Hippler's section 998 offer of $45,000.  Accordingly, we will remand the matter to the trial court to determine the judgment amount and to reconsider the assessment of costs in light of our decision.

## C.    *Treble damages*

Section 3346 and Code of Civil Procedure section 733 provide for trebling damages for wrongful injuries to trees.  Although neither section expressly requires malicious intent, courts have long held that an award of treble damages requires a showing that the wrongdoer acted willfully and maliciously.  (*Caldwell v. Walker* (1963) 211 Cal.App.2d 758, 762; *Crofoot Lumber, Inc. v. Ford* (1961) 191 Cal.App.2d 238, 246.)  "The intent required is the intent to vex, harass, or annoy or injure the plaintiff.  It is a question of fact for the trial court whether or not such intent exists." (*Crofoot Lumber, Inc. v. Ford*, at p. 246.)  Evidence showing the wrongdoer "disregarded the rights of the adjoining owner" has been found sufficient to support a finding of willful and malicious conduct.  (*Roche v. Casissa* (1957) 154 Cal.App.2d 785, 789.)

The treble damages provisions of section 3346 and Code of Civil Procedure section 733 are discretionary.  (*Drewry v. Welch* (1965) 236 Cal.App.2d 159, 180–181.) The doubling provision of section 3346, however, is mandatory.  Thus, "for [willful] and malicious trespass the court *may* impose treble damages but *must* impose double damages[, and] . . . for casual and involuntary trespass, etc., the court *must* impose double damages." (*Id*. at p. 181.)

In the present case, the trial court rejected the Tetzners' request for trebling the damages.  At the hearing on the parties' post-trial motions, the court explained, "I do not

13

believe it is appropriate to treble the damages in light of the findings of the jury rejecting the claim of maliciousness on the part of Mr. Hippler." As we have seen, the jury found that, in entering the Tetzners' property and cutting their trees, Hippler did not act willfully and maliciously.

The Tetzners contend the trial court abused or failed to exercise its discretion by deciding not to treble damages. We find no abuse of discretion.[11]

The Tetzners claim the jury's finding was not supported by substantial evidence. They argue that because the jury found that the Tetzners did not give Hippler permission to cut their trees, the jury *necessarily* found that Hippler *knew* he did not have permission—which was the equivalent of finding he acted willfully and maliciously. But the second proposition does not necessarily follow from the jury's finding. Hippler testified he believed he had permission from the Tetzners to cut the trees.[12] The jury could have determined that Hippler *believed* he had permission based on what his daughter told him, even though it also found the Tetzners had not, in fact, given him permission to cut their trees.

The Tetzners assert the testimony of Renie and Hippler's daughter "differed too starkly to support any possible claim that there was a good faith misunderstanding or that Hippler could have mistakenly believed that he had [their] consent to cut their trees." But again, the evidence does not necessarily lead to the conclusion the Tetzners assert. The jury could have determined that the conversation among the Tetzners, Renie, and Hippler's daughter about cutting the trees did not occur exactly as either side described, such that there was room for misunderstanding. Or the jury could have concluded that

---

[11] Because we reject the Tetzners' claim on the merits, we need not consider Hippler's argument that the claim has been forfeited because they failed to raise the issue in a motion for new trial. (Cf. *Roche v. Casissa*, *supra*, 154 Cal.App.2d at p. 787 [general rule is that challenge to damages award as excessive is precluded unless previously raised in a motion for new trial; but rule did not apply where appellant did not contend damages were excessive but rather argued no damage at all was shown by the evidence].)

[12] He also testified that he did not intend to damage the trees and he had no intent to annoy or disrespect the Tetzners in any way.

14

Hippler's daughter was not entirely truthful with Hippler about what the Tetzners had said to her, but he believed her. In short, we reject the Tetzners' argument that either the jury's factual findings or the evidence in this case *required* a finding that Hippler acted willfully and maliciously.[13]

Finally, we reject the Tetzners' argument that the trial court did not abuse its discretion but rather failed to exercise it. Nothing in the record suggests the trial court misunderstood its discretion to treble the damages pursuant to section 3346. The Tetzners' argument is premised on their primary claim that the jury's finding that Hippler did not act willfully and maliciously was erroneous. Since we have concluded there was sufficient evidence to support the jury's finding, this argument fails.

## DISPOSITION

The judgment is vacated, and the cause is remanded to the trial court with directions to determine the amount of the Tetzners' actual judgment and assess costs in accordance with this decision. The parties are to bear their own costs on appeal.

---

[13] The Tetzners cite cases in which the trial court awarded treble damages, and the Court of Appeal affirmed. In each case, the appellate court concluded there was sufficient evidence to support the lower court's finding of willful and malicious conduct where it could be inferred the wrongdoer disregarded the rights of the owner. (*Caldwell v. Walker*, *supra*, 211 Cal.App.2d at p. 766 ["On this record, we cannot say that, as a matter of law and contrary to the court's finding, the defendants did not act willfully and maliciously."]; *Roche v. Casissa*, *supra*, 154 Cal.App.2d at p. 789; *Butler v. Zeiss* (1923) 63 Cal.App. 73, 76-77.) These cases are of no help to the Tetzners. Here, the issue is whether the jury's finding that Hippler did *not* act willfully and maliciously was supported by substantial evidence. As we have explained, we cannot say that, as matter of law, Hippler acted willfully and maliciously.

_____
Miller, J.

We concur:

_____
Richman, Acting P.J.

_____
Stewart, J.

A140643, *Tetzner v. Hippler*